FRANK C. ROBERTS *v.* STATE OF INDIANA.

[No. 576S136.  Filed March 10, 1977.]

*Donald P. Levinson, Levinson & Lustina,* of Merrillville, for appellant.

*Theodore L. Sendak,* Attorney General, *Lesly A. Bowers,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellant, Frank C. Roberts, was charged by affidavit on March 20, 1973, with the crimes of commission of or attempt to commit a felony (robbery) while armed, Ind. Code § 35-12-1-1 (Burns 1975), and infliction of an injury in the commission of or attempt to commit a robbery, Ind. Code § 35-13-4-6 (Burns 1975). On December 3, 1975, he was convicted on both counts. The jury imposed a determinate sentence of twenty-five years for the armed robbery conviction. The Appellant was sentenced to a concurrent sentence of life imprisonment for his second convicion. This appeal is taken from the trial court's denial on August 4, 1976, of a belated motion to correct errors.

The evidence at trial revealed that on February 10, 1973, the Appellant attempted to rob the male chorus of the G. L. Baptist Church in East Chicago, Indiana. The chorus was rehearsing when, at about 8:00 p.m., the Appellant walked into the church holding a gun. He shouted that he was a drug addict and wanted money. When he grabbed the pianist, Velma Scarbrough, and held his gun to her neck, Mrs. Scar-

brough struggled free and held the Appellant's gun hand in the air. Members of the chorus joined in and a scuffle ensued in which one of the chorus members was shot in the knee. In the end, the Appellant was subdued and held to the floor until police arrived.

When the Appellant was arrested, he was found to be experiencing withdrawal symptoms and was taken to a hospital. A drug was administered at that time and the Appellant was taken to the police station. On February 11, 1973, at about 10:30 a.m., the Appellant gave a statement to police in which he confessed. This confession was admitted into evidence at trial, as was the gun involved in the shooting. Five eyewitnesses to the crimes charged testified, as did the arresting police officers and the officers to whom the confession was made.

## I.

The first contention presented by this appeal is that the Appellant's pauper trial counsel did not provide effective legal representation. In support of this general contention the Appellant presents a list of things he contends his attorney failed to do in his preparation for trial. He then goes on to argue that this lack of preparation is apparent from his counsel's performance at trial.

The list of "routine steps" allegedly neglected by defense counsel reads as follows:

"1) Devoting ample time with the client to become atuned to the issues presented.

2) The filing of routine discovery motions. The record in this case discloses that no such motions were filed by Attorney Reardon on his client's behalf.

3) A request by defense counsel for a list of names and addresses of witnesses that the State intends to call.

4) The taking of depositions of State's witnesses. In a case such as this, the question of identity could have loomed large. It is possible that defense counsel might have perceived discrepencies in testimony of the State's

witnesses. More importantly, depositions would have clarified the exact nature of the shooting, whether intentional or accidental.

5) Inquiry as to whether or not suppressible items exist. If in fact there was a basis to move to suppress, as it appears there was, to in fact move to suppress those items.

6) Inquiries into mitigating factors. For example, discovery of whether character witnesses existed, and, further whether the Defendant had lived in an exemplary fashion since the date of the arrest, which was in excess of one (1) year prior to the date of trial. In a case where the jury assesses the penalty, such a consideration might have been meaningful.

7) Basic research into the various elements of the crimes charged as well as research into possible existing defenses.

8) Research and preparation of adequate jury instructions.

9) Inquiries into the possibilities of plea negotiations."

We find this list highly speculative and often misleading, and note that the Appellant has failed to show the significance or prejudice which attaches to any of its items. For the sake of organization we shall group these specific allegations as best we can.

Items 2, 3 and 4 concern pre-trial discovery. We note at the outset that discovery was obtained in this case. The record of the hearing on the Appellant's belated motion to correct errors shows that defense counsel was given full access to the prosecution file. That file contained statements by persons later called as prosecution witnesses. In fact, the record of the Appellant's trial reveals that one witness was effectively impeached through the use of such a statement. (That cross-examination centered on the struggle which preceded what the defense contended was an "unintentional" or "accidental" shooting.)

The Appellant presents no facts which show that the pre-trial discovery employed here was not sufficient. No

evidence is presented as undiscovered. No witness is presented as impeachable and unimpeached. It would thus appear that no motions for discovery were made and no depositions were taken because none were necessary. The burden is upon an appellant that error complained of was prejudicial. *Hester* v. *State*, (1974) 262 Ind. 284, 315 N.E.2d 351.

Items 5 and 6 may be categorized as concerning investigation of facts. Our discussion of pre-trial discovery makes it clear that *some* inquiry into the facts of this case was conducted. Once again, the Appellant has failed to present evidence to show that this inquiry was not sufficient.

The primary evidence offered by the Appellant on this question is his testimony at the hearing on his belated motion to correct errors. He testified, in short, that his trial counsel consulted with him for about five minutes before trial and that no questions regarding the facts of the case were put to him. The Appellant's trial counsel testified that he consulted with his client for an hour to an hour and a half before trial. (This length of time will be discussed later.) The trial judge stated that he was inclined to believe the Appellant's counsel. In any event, this testimony presents a clear conflict of evidence which an appellate court cannot resolve.

We cannot find defense counsel's investigation of the facts of this case inadequate on this basis. Again, the Appellant fails to present any facts as undiscovered by his trial counsel. He speculates that mitigating circumstances were not investigated, but the record reveals that the defense stressed, during final argument and the cross-examination of witnesses, the factors of the Appellant's addiction and the "accidental" nature of the shooting. These "mitigating circumstances" are emphasized repeatedly in the Appellant's brief. There is nothing to show that there were any others.

The Appellant does contend that his confession should have been suppressed. There is nothing in the record, however, which suggests that defense counsel did not seek suppression

because he was unacquainted with the facts of the case. The Appellant alleged at his hearing that his confession was made while he was undergoing heroin withdrawal and after police promises of "another shot" if he talked. There is no evidence which shows that defense counsel was not aware of this claim. The record clearly shows that he was well-aware of the Appellant's addiction.

We think it more likely that defense counsel simply *chose* not to seek suppression of the confession in this case. The trial record shows that the Appellant was fully advised of his *Miranda* rights before his statement was given. The Appellant had been treated at a hospital and appeared "normal" when police questioned him. It was within the judgment of the trial counsel to determine that a motion to suppress would not be fruitful. The Appellant presents no facts to show that this decision was erroneous.

This discussion overlaps with items 7 and 8 of the Appellant's list, which concern legal research. These items relate to contentions contained in the Appellant's brief that a defense based upon "diminished capacity" or the "accidental" nature of the shooting should have been presented. (We have already noted that such a defense was offered. However, the defense presented related to mitigating circumstances and the jury's power to sentence in this case.) While the record indicates that no legal research was conducted here, we do not think that it can be said that any was necessary.

Conviction for the crime of robbery, the felony underlying the Appellant's charge of commission of or attempt to commit a felony while armed, requires proof only of general criminal intent and knowledge. *Gregory* v. *State*, (1973) 259 Ind. 652, 291 N.E.2d 67. Infliction of injury while engaged in the commission of a robbery or attempted robbery requires proof only of the intent and knowledge necessary to prove the crime of robbery. Ind. Code § 35-13-4-6 (Burns 1975). The evidence at trial amply showed that the Appellant possessed the intent to deprive his victims

of property and knowledge of what he was doing. It was within the judgment of trial counsel to decide that a "diminished capacity" defense simply would not work under the facts of this case. There is nothing in the record which shows that the Appellant's attorney did not possess the legal knowledge necessary to make this decision.

If these possible defenses were competently rejected by defense counsel, it certainly was proper not to submit instructions on those concepts. The Appellant does not contend that any of the instructions given by the trial court were inadequate or erroneous, and the failure of defense counsel to submit other instructions cannot be considered an indication of incompetence.

Item 9 of the list of purported attorney failings is qualified in the body of the Appellant's argument. It is acknowledged that a plea bargain was negotiated by the Appellant's trial counsel, under which the Appellant would have pleaded guilty to armed robbery in exchange for a recommendation of a determinate sentence of ten years. The Appellant contends, however, that this plea bargain was not negotiated within the time prescribed by "an informal rule of court" governing the submission of guilty pleas.

This argument fails on two counts. First, the record contains no evidence of any "informal rule of court" which would have hindered submission of the negotiated plea. The only evidence in the record is that the plea bargain was "acceptable to all parties concerned." Second, the Appellant *rejected* this plea bargain. We do not see that the Appellant can be said to have been prejudiced here, even if it is assumed that the plea bargain would not have been accepted by the trial court because of its local rules.

We consider item 1 on the Appellant's list, concerning the devotion of time to the Appellant, at this time in our discussion because it seems that the amount of consultation required in this case must to some degree depend on the other items previously discussed. The facts of this case are not complex.

Extensive legal research was not required. Full discovery was afforded to defense counsel. We do not think that the pre-trial consultation given in this case can, under these circumstances, be considered inadequate as a matter of law. *Wynn* v. *State,* (1976) 265 Ind. 133, 352 N.E.2d 493. *Jackson* v. *State,* (1975) 264 Ind. 54, 339 N.E.2d 557.

After listing these specific allegations, the Appellant goes on to argue that his trial counsel's "lack of preparedness shows through on the face of the record." It is urged that his opening and closing statements were perfunctory and that his cross-examination of witnesses was inconsequential. It is pointed out that no witnesses were called by the defense. None of this is persuasive.

The record shows that the Appellant's counsel, an attorney of some twenty years experience, gave a brief opening statement and a more extensive closing statement. We cannot find brevity to equal inadequacy or ineffectiveness. A reading of those statements reveals that they are understandable and well-reasoned. There are some cases in which there is no defense. An attorney is not required to fake one.

The trial court specifically found that defense counsel adequately cross-examined the State's witnesses. We have already noted that one witness for the prosecution appears to have been effectively impeached. The record is replete with defense objections which were sustained by the trial court. No lack of preparedness is apparent from these parts of the record.

The only witness cited by the Appellant as not called to testify is himself. He testified that he expressed to his trial attorney a desire to testify regarding his addiction and his lack of intent. His attorney testified, however, that the Appellant had prior felony convictions and it is clear that the decision not to present such testimony was a matter of trial tactics. This Court cannot engage in speculation as to what may have been a more advantageous defense strategy. *Kerns* v. *State,* (1976) 265 Ind. 39, 349 N.E.2d 701; *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686.

Incompetency of counsel revolves around the particular facts of each case. *Thomas* v. *State*, (1969) 251 Ind. 546, 242 N.E.2d 919. There is a presumption that counsel [4, 5] has been competent. *Haddock* v. *State*, (1973) 260 Ind. 593, 298 N.E.2d 418; *Payne* v. *State*, (1973) 261 Ind. 221, 301 N.E.2d 514; *Hoskins* v. *State*, (1973) 261 Ind. 291, 302 N.E.2d 499. Strong and convincing evidence is required to rebut this presumption. *Blackburn* v. *State, supra; Robbins* v. *State*, (1971) 257 Ind. 273, 274 N.E.2d 255. Such evidence has not been presented here.

## II.

The Appellant also correctly contends that he was improperly sentenced for both armed robbery and infliction of injury in the commission of a robbery. This Court held in *Swininger* v. *State*, (1976) 265 Ind. 136, 352 N.E.2d 473, that such sentencing was erroneous:

> "The armed robbery of which the defendants were convicted was clearly embodied in the infliction of injury of which the defendants were also convicted, just as their assault and battery of Mr. Hertel was embodied therein. A conviction upon the charge of inflicting the injury would have been a bar to the subsequent prosecution for the armed robbery. Consequently, a sentence should not have been imposed upon the verdict of guilty upon the robbery charge. *Johnson* v. *State*, (1974) [262] Ind. [164], 313 N.E.2d 535; *Johnson* v. *State*, (1970) 253 Ind. 570, 255 N.E.2d 803; *Coleman* v. *State, supra.*"

352 N.E.2d 473 at 478-479.

This cause is remanded to the trial court with instructions to vacate the sentence upon the armed robbery conviction. The judgment of the trial court is affirmed with regard to the conviction for inflicting injury in the commission of a robbery.

Givan, C.J., Hunter, Prentice, JJ., concur; DeBruler, J., concurs with opinion in which Prentice, J., concurs.

## CONCURRING OPINION

DEBRULER, J.—I concur both in the conclusion of the majority that appellant was not denied effective assistance of counsel and in the vacation of the armed robbery sentence, but I feel that one further comment is necessary regarding our standards for determining whether representation was sufficiently effective.

This was a case in which appellant was "caught in the act" of an attempted armed robbery, in which he shot and wounded a man. His trial counsel consulted with appellant for a rather brief time, familiarized himself with the State's case by informal discovery, and attempted to arrange a plea bargain. When appellant rejected the agreement, his attorney proceeded to trial with what might be termed a low profile defense: he called no witnesses, did not attack the admissibility of appellant's confession, and apparently did not argue at great length. The majority opinion holds that the manner in which the attorney conducted the trial and preparations was the result of his decision as to trial strategy, and that this Court will not speculate as to defense strategies more advantageous than that chosen, citing *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686. This rule has also been stated as holding that we will not substitute our judgment as to preferable trial strategy for counsel's. *Maldonado* v. *State,* (1976) 265 Ind. 492, 355 N.E.2d 843, 850.

Any action or inaction by trial counsel could be viewed as "trial strategy." Since this Court disclaims any intention of second-guessing trial counsel's choice of strategy, effective review of the issue of effectiveness of representation could become impossible, and the guarantee of the right of effective assistance of counsel would be farcical. It would seem that if our review of the effectiveness of trial counsel's efforts is to mean anything, the definition of the "strategy" to which we defer must be limited to situations in which more than one reasonable alternative confronts counsel. Choice between reasonable alternatives is *strategy;* avoidance of the only

reasonable alternative, or selection of a patently unreasonable one is a *mistake*. An isolated mistake, especially if not serious, need not amount to ineffective representation, but should be considered in determining effectiveness.

In this case counsel's failure to conduct a "vigorous" defense is reasonable because of the danger of antagonizing the jury, which had the power to choose appellant's armed robbery sentence. Similarly a decision to have appellant testify as to his heroin addiction could well have alienated the jurors rather than obtained their sympathy. In such cases the court's refusal to second-guess trial counsel's choice of courses of action is appropriate. This reasonable forebearance from deciding cases on the basis of hindsight should not, however, become a rote rationalization by which this Court declines to safeguard criminal defendants' rights to even a minimally effective level of assistance of counsel.

Prentice, J., concurs.

NOTE.—Reported at 360 N.E.2d 825.