Clay CAMERON, Appellant,

v.

STATE of Indiana, Appellee.

No. 480S98.

Supreme Court of Indiana.

Nov. 25, 1980.

John R. Politan, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–appellant Clay Cameron was charged in Marion Superior Court with commission of a felony while armed, to–wit: robbery, Ind. Code § 35–12–1–1 (Burns 1975) (Count One); commission of a felony while armed, to–wit, rape, § 35–12–1–1

(Count Two); and inflicting injury during the commission of a robbery, § 35–13–4–6 (Count Three). He was convicted by a jury on March 22, 1977, of armed rape and inflicting injury during the commission of a robbery, and received sentences of twenty years and life imprisonment, respectively. Cameron then appealed those convictions to this Court. On January 3, 1979, this Court reversed the convictions and ordered a new trial for Cameron. Ind., 383 N.E.2d 1039. The sole issue disposed of on that appeal concerned the trial court's interposing himself into the jury deliberations and emphasizing a particular instruction to the jury.

On remand, Cameron's case came to trial for the second time on October 15, 1979. At this trial, the jury convicted him of armed rape under § 35–12–1–1 and of armed robbery under the same statute. He was sentenced to twenty–five and fifteen year terms, respectively, to be served consecutively. This appeal followed. Appellant Cameron presents three issues for our review, concerning: (1) whether Cameron's right against double jeopardy was violated; (2) whether the trial court erred in failing to grant a mistrial after an alleged violation of a discovery order; and (3) whether there is sufficient evidence to sustain the verdict on the question of insanity.

The evidence showed that on July 19, 1976, at approximately 11:00 a. m., appellant Cameron entered Swan's Record Shop in Indianapolis, where the victim, S. P., was working. S. P. had known Cameron for about one year, and she testified that Cameron came into the store usually once a day. S. P. also stated that he usually had been drinking prior to coming to the store. On the day in question, Cameron waited until no customers were in the store, and then locked the door and moved a window sign to indicate the store was closed. He drew a small pocket knife and advanced toward the victim, demanding the money from the cash register. Cameron held S. P. at knifepoint while removing the money from the drawer. Cameron then forced S. P. into an upstairs room at the rear of the store, where he ordered her to disrobe. He then raped her with the knife blade held against her throat, and later forced her to commit oral sodomy on him. Cameron then stabbed her in the lower chest area at least once, and cut three of her fingers as she tried to grab the weapon. When Cameron stumbled and fell, S. P. ran from the premises to a nearby store and sought assistance. Cameron was apprehended a short while later in a tavern a few blocks from the record shop.

## I.

Appellant Cameron first contends he was twice placed in jeopardy for the same offense, in contravention of the Fifth and Fourteenth Amendments to the United States Constitution, and article one, section fourteen of the Indiana Constitution. Appellant asserts that, because allegedly no verdict was returned on the armed robbery charge in the first trial, he was thereby acquitted of that charge. However, he argues, he was retried on this charge in the second trial and found guilty. Thus, he contends that *Price v. Georgia*, (1970) 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300, requires a reversal of his armed robbery conviction.

This argument is without merit for several reasons. Even a cursory examination of the record of the two trials should have revealed to appellate counsel that the factual assertions upon which he bases this issue are indisputably contrary to the facts clearly revealed in the record. First, appellant Cameron clearly was not acquitted of armed robbery at the first trial. Cameron was initially charged in a separate court with armed robbery. This armed robbery was a part of the inflicting injury offense. This separate count was apparently dismissed prior to the first trial. The language of the armed robbery charge (Count One) was crossed out in preliminary instruction number three, indicating this language was omitted when the preliminary instructions were given. Preliminary instruction number three reveals that Count Two, the armed rape charge, was renumbered "Count One, " and Count Three, the inflicting injury charge, was renumbered "Count Two."

Preliminary instruction number four likewise refers to only two counts. The final instructions make no reference to armed robbery constituting one of the counts in the information. However, final instruction number twenty–two does state that armed robbery is a lesser–included offense of inflicting injury during the commission of a robbery. The final instructions also define armed robbery and instructed the jury that, alternatively, they could convict on this offense.

Thus, it is not true, as appellant claims, that he was charged with three offenses in the first trial. Obviously, no verdict was *returned* on the separate armed robbery count, because this charge was not given to the jury as a *separate* count. As will be shown, a separate verdict on this offense, in addition to a verdict on the inflicting injury charge, would have been improper. Armed robbery was presented only as a lesser–included offense of the inflicting injury charge, and the jury chose to find Cameron guilty of the greater offense. Thus, as will also be shown, appellant was not acquitted of anything in the first trial. The record also reveals that the armed robbery count was dropped "by agreement of the parties" prior to the second trial, and deletion procedures were used in the instructions in the second trial similar to those used in the first trial. Clearly, then, neither was armed robbery submitted to the jury as a separate count in the second trial.

More fundamentally, appellant's argument completely ignores the operation of principles of lesser–included offenses. Commission of a felony while armed, as initially charged in Count One, is a lesser included offense of inflicting injury during the commission of a robbery, the crime charged in the original Count Three. *Pinkston v. State,* (1978) 268 Ind. 627, 628–29, 377 N.E.2d 1355, 1356; *Bobbitt v. State,* (1977) 266 Ind. 164, 168, 361 N.E.2d 1193, 1196; *Pinkler v. State,* (1977) 266 Ind. 467, 471, 364 N.E.2d 126, 128; *Roberts v. State,* (1977) 266 Ind. 72, 80, 360 N.E.2d 825, 829; *Swininger v. State,* (1975) 265 Ind. 136, 143, 352 N.E.2d 473, 478–79. *See Goodpaster v. State,* (1980) Ind. 402 N.E.2d 1239; *Bean v.*

*State,* (1978) 267 Ind. 528, 529, 371 N.E.2d 713; *Roddy v. State,* (1979) Ind.App., 394 N.E.2d 1098. Thus, charging Cameron in Count Three with inflicting injury also, in effect, necessarily charged him with armed robbery. *Snodgrass v. State,* (1980) Ind., 406 N.E.2d 641, 643 (opinion on rehearing); *Webb v. State,* (1972) 259 Ind. 101, 103, 284 N.E.2d 812, 813. The prosecution could not have proved that Cameron inflicted injury with a dangerous or deadly weapon during the commission of a robbery (Count Three) without also proving that he committed a robbery while armed with a dangerous or deadly weapon. *See* Ind.Code §§ 35–12–1–1, 35–13–4–6 (Burns 1975). Generally, in terms of its legal effect, a separate armed robbery count "adds nothing to the case. It dos not level an *additional* allegation or charge against the defendant." *Snodgrass v. State, supra,* 406 N.E.2d at 643 (emphasis in original).

In *Webb v. State, supra,* the defendant was charged with robbery and armed robbery. We explained in *Webb* that where the offense charged in one count was necessarily included in the offense charged in the other, "only the greater count was required to authorize the giving of instructions upon both crimes and a conviction upon either." *Webb v. State, supra,* 259 Ind. at 103, 284 N.E.2d at 813. Stated another way, a finding of guilt of the greater offense is a finding of guilt of all necessarily–included lesser offenses. *Goodpaster v. State, supra; Snodgrass v. State, supra; Webb v. State, supra.*

Therefore, just as adding or retaining the separate armed robbery count did not add anything to this case, neither did dismissing the armed robbery count take anything away from the case. Separately charging armed robbery was an unnecessary formality, and the court wisely removed armed robbery, as a *separate* charge, from the jury's consideration. Further, Cameron could not properly have been convicted of armed robbery *and* inflicting injury. *Pinkston v. State, supra; Bobbitt v. State, supra. See Snodgrass v. State, supra.* The armed robbery charge, however, effectively

remained a part of the case, as a lesser–included offense of the inflicting injury charge. The jury was clearly instructed to that effect in both trials, after the separate armed robbery count had been deleted. Whereas, in the first trial the jury found Cameron guilty of the greater offense, in the second trial the jury merely opted for the lesser–included offense. In neither trial was Cameron acquitted of armed robbery. In fact, the jury's finding in the first trial that appellant committed the inflicting injury crime presupposes a finding that he committed armed robbery, a necessary part of the greater crime. The second trial thus did not result in a conviction on a charge of which Cameron had previously been acquitted. Therefore, Cameron was not placed in jeopardy twice for the same crime. This issue is without merit.

## II.

■ Appellant Cameron next argues the trial court erred by failing to grant a mistrial after an alleged violation of the court's discovery order. Shortly after beginning his cross–examination of the victim, counsel attempted to lay a foundation for showing that the victim's testimony on direct examination was different from any previous account she had given of the incident. In the midst of his first question under this approach, the prosecutor objected, arguing that the question misstated the facts. The prosecutor asserted that the victim had, in fact, given a previous statement to a police officer in which she had mentioned details to which she had testified on direct examination, and on which she was being challenged on cross–examination. Defense counsel indicated that he was unaware of any such statement. A discussion was then had among the court, defense counsel and the prosecutor, outside the presence of the jury. When the prosecutor showed defense counsel a copy of the statement to which she was referring, defense counsel asserted that he had not seen that statement before. The colloquy ended without further discussion and with no motions having been made. The court instructed the jury to disregard defense counsel's last question,

and counsel then continued his cross–examination.

A short while later, a recess was taken. During that recess, defense counsel moved for a mistrial, arguing that the State had failed to comply with his discovery request by failing to furnish him with a copy of the statement in question. The prosecutor argued that the "Notice of Discovery Compliance," filed some two and one–half months earlier, stated that a copy of this statement was furnished to counsel, and that, as far as she knew, the statement was, in fact, furnished. Defense counsel reasserted that, in spite of what the prosecution's discovery response stated, he had never seen a copy of the statement. Counsel claimed "manifest surprise" at the existence of the statement. He asserted that the statement fortified the victim's testimony in certain areas and as to certain items which "are contained nowhere else, Your Honor, except in the statement that they referred to, and that statement, Your Honor, was not provided to me." Record at 327.

The trial court refused to grant a mistrial, but offered defense counsel as much time as he needed to examine the statement. Defense counsel refused a continuance, claiming that no amount of time would alleviate the problem. He claimed that he had begun his cross–examination of the victim with the belief that the victim had given an account of the incident on direct examination unlike any previous account she had given. He claimed that he had thus "made a fool" of himself before the jury, and that no amount of time would rectify the situation. The statement was subsequently admitted into evidence on the redirect examination of the victim. Appellant now argues that admitting the statement merely compounded the prejudice resulting from the prosecutor's failure to disclose this statement.

A close examination of the record reveals that this issue is utterly lacking in merit. On the first appeal of this case, Cameron was represented by attorney Duge Butler, Jr. *Cameron v. State,* (1979) Ind., 383

N.E.2d 1039, Brief of Appellant. Cameron had had different counsel at his first trial. After this Court's remand of the cause for a new trial, Butler entered his appearance in the trial court on April 2, 1979. Two days later, Butler filed a discovery motion requesting, *inter alia*, that the State be required to:

"...

5. Furnish defendant's attorney with all written reports, notes, memorandums, maps, drawings or diagrams, written or drawn or otherwise prepared by the State of Indiana or its agents in connection with or pertaining to preparation of the State's case, including but not limited to police reports, capias information sheets, and DHC's.

. . . . .

10. Furnish defendant's attorney with any information or evidence tending to be favorable to the defendant, or tending to lead to the discovery of favorable or exculpatory information or evidence which becomes known to the State of Indiana at any time prior to the trial."

Record at 168–69. On July 30, 1979, approximately two and one–half months prior to the beginning of the second trial, the State filed its "Notice of Discovery Compliance." This notice stated, *inter alia*, that copies of the following documents had been given to defense counsel:

"1. DHC
2. Capias Information Sheet
3. Criminal Record of Defendant
4. List of State's witnesses as shown on the Information
5. Physical evidence described in the DHC is located in the IPD Property Room and available for inspection at the convenience of counsel and Detective N. Bacon, at 633–7722
6. Criminal records of State's witnesses, if any, will be furnished to counsel prior to trial
7. IPD inter–department communications from Det. Sgt. Darryl Churchill dated July 19, 1976
8. Victim's type–written statement

9. IPD Crime Lab examination report dated July 26, 1976."

Record at 189. Item number eight is, without question, the statement at issue here. During the ten–week period before trial, defense counsel never indicated to anyone that the State had failed to supply him with item number eight, as the notice stated. Presumably, counsel requested copies of these documents so that he might prepare his defense, in part by examining the victim's statements for inconsistencies. If counsel did, in fact, receive a copy of the statement then the discovery order was not violated, and counsel's alleged surprise was due to his own misplacing or forgetting the statement.

If we assume the prosecutor failed—for whatever reason—to supply a copy of the statement, defense counsel should have discovered this omission and raised the matter earlier if he wished to make an issue of it. He cannot now, by his demand for a mistrial, hold the trial court accountable for his own inadvertence. We simply refuse to believe that counsel was, as he now claims, "completely misled by the disclosure which was supplied him by the State of Indiana."

Further, there is strong evidence to suggest that, in fact, defense counsel was aware of this particular statement, or at least its factual content. By his own assertion to the trial court in the second trial, the statement in question contained the victim's account of certain details of the crime which she had given in no other statement. Yet, in appellant's brief on the first appeal of this cause, counsel recites as fact the same details which he now claims were recited in *only* the statement in question. *Cameron v. State, supra,* Brief of Appellant at 12. That brief also contains several other statements which strongly suggest that attorney Butler was aware of this statement when the first appeal was taken, some twenty–three months before the second trial of this cause. Thus, if defense counsel actually was surprised to hear of this statement at the second trial, his surprise was occasioned by his own neglect. In such a situation, we cannot say the trial court errs when it fails to grant a mistrial.

Finally, even if the prosecutor did violate the discovery order, and even if counsel was unfairly surprised to learn of this statement and its content, we do not believe the trial court erred in failing to grant a mistrial. Sanctions for a failure to comply with a discovery order are discretionary, not mandatory. *Richardson v. State*, (1979) Ind., 388 N.E.2d 488, 490; *Rowley v. State*, (1979) Ind., 394 N.E.2d 928, 930. Generally, an order compelling disclosure and a continuance are the appropriate remedies in such a situation. *Richardson v. State, supra*; *Reid v. State*, (1978) 267 Ind. 555, 565, 372 N.E.2d 1149, 1154–55. Where the violation is grossly misleading or demonstrates bad faith, exclusion of the evidence may be required. *O'Conner v. State*, (1980) Ind., 399 N.E.2d 364, 366. In this case, defense counsel was offered, and expressly refused, a continuance. Instead, he demanded a mistrial, arguing that a continuance was not an adequate remedy because the contents of this statement would have required him to back–track in his cross–examination of the victim, thereby forcing him, in his words, to make a fool of himself in front of the jury.

The record likewise fails to support this contention. When the issue arose, counsel was in the middle of his *first* question under the tactical approach he was beginning; this was only his fifth question on cross–examination. Counsel was informed or reminded of the statement in question before this question was completed. In fact, he was given a copy of the statement at that time. Counsel had an opportunity to examine the document at that time and change his approach or make any motions he felt were necessary. Nevertheless, counsel proceeded for several more minutes with cross–examination, and did not request a mistrial until the recess which followed. We do not believe the situation presented here forced counsel into futile and senseless defense tactics or forced him, as he claims, to make a fool of himself. At the time the alleged surprise was discovered, a continuance would certainly have eliminated any unfairness to appellant. However, counsel did not request a continuance, and proceeded with his cross-examination. In fact, he refused a continuance when one was offered to him. The trial court did not err in refusing to grant a mistrial in this situation.

### III.

■ Finally, appellant challenges the sufficiency of the evidence on the question of insanity. At the time this crime was committed, the prosecution was required to prove sanity beyond a reasonable doubt in a case where that issue is raised. *McCoy v. State*, (1979) Ind., 393 N.E.2d 160, 163; *Downs v. State*, (1977) 267 Ind. 342, 347, 369 N.E.2d 1079, 1081. Appellant argues there was insufficient evidence from which the jury could find beyond a reasonable doubt that Cameron was sane when this crime was committed.

There was a great deal of evidence presented on this issue. The two court–appointed psychiatrists testified that, in their opinion, Cameron was legally sane when these crimes were committed. The evidence revealed that Cameron had suffered a severe head injury in a motorcycle accident some twelve years before the incident in question. He had gone through extensive surgery for this injury, and was on full disability coverage under Social Security. Several witnesses testified that they had seen Cameron act in an abnormal manner and/or believed him to be retarded. Witnesses described him as having a "childish mentality" or living in a "child–like world." On the other hand, many witnesses testified that they believed Cameron to be of sound mind and that he generally acted rationally. Thus, we are presented with conflicting evidence on this issue. In such a case, it was the jury's job to resolve these conflicts, and, in so doing, the jury had a right to believe or disbelieve whomever they chose. *Lonson v. State*, (1980) Ind., 406 N.E.2d 256, 259; *Sypniewski v. State*, (1977) 267 Ind. 224, 231–32, 368 N.E.2d 1359, 1363–64. We believe there was substantial evidence to support the jury's finding beyond a reasonable doubt that Cameron was sane at the time this crime was committed.

Finding no error, we affirm the judgment of the trial court.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.