Jerry Kevin JONES, Appellant,

v.

STATE of Indiana, Appellee.

No. 282S53.

Supreme Court of Indiana.

June 14, 1983.

HUNTER, Justice.

Defendant, Jerry Kevin Jones, was convicted of attempted rape, a Class B felony, Ind.Code § 35–41–5–1, § 35–42–4–1(a) (Burns 1979 Repl.), and was found to be an habitual offender, Ind.Code § 35–50–2–8 (Burns 1982 Supp.). He was sentenced to forty-five years' imprisonment. His direct appeal raises the following six issues:

1. Whether defendant was denied effective representation by his court-appointed counsel;

2. Whether defendant was denied his right to self-representation;

3. Whether the trial court erred in denying defense counsel's motion to withdraw;

4. Whether defendant voluntarily waived his right to be present at trial;

5. Whether defendant was denied his Sixth Amendment right to present evidence; and

6. Whether defendant's sentence for being an habitual offender violates the Indiana and United States Constitutions.

A brief statement of the facts most favorable to the state show that the defendant entered the victim's dormitory room during the early morning hours of August 27, 1980. He threatened the victim and her roommate and ordered them both to disrobe. Defendant slapped the victim several times when she did not obey. He spread apart the victim's legs, dropped his pants, and ordered her to "put it in." Defendant threatened the victim with a bottle when she did not obey and hit her on the leg when she struggled and screamed. Another resident of the dormitory, hearing the victim's screams, knocked on the victim's door. The defendant pulled up his pants, unlocked the door, exited in the only direction allowing escape, and ran down six flights of stairs.

In a taped statement to police, which was played for the jury, defendant stated that he had consumed alcohol, acid, and speed the night of the offense, and could not remember what happened in the victim's room. He did remember going to the dormitory to see a friend, who was not there. He remembered walking the halls and going in an open door. He remembered a girl's scream, running away, and going to a friend's trailer for the rest of the night.

I.

Defendant first alleges that he was denied effective assistance of counsel because his court-appointed attorney failed to assert the defense of intoxication. Defendant alleges that his attorney did not contact witnesses who would have testified that defendant was intoxicated the evening of August 27. Defendant had given the attorney the names and addresses of these witnesses. Defendant also alleges that his attorney failed to obtain expert testimony on the effect of alcohol and drugs, despite the defendant's request. Defendant argues that these failures demonstrate inadequate pretrial preparation and, consequently, denied him effective counsel.

 The standard governing incompetent representation is whether the representation was a " 'mockery of justice,' as modified by the requirement of 'adequate legal representation.' " *Tessely v. State,* (1982) Ind., 432 N.E.2d 1374, 1375 (citing *Adams v. State,* (1982) Ind. 430 N.E.2d 771 (Hunter, J., dissenting)); *see also Cottingham v. State,* (1978) 269 Ind. 261, 379 N.E.2d 984. This standard is implemented with the presumption that counsel is competent.

Strong and convincing evidence is necessary to overcome this presumption. *Tessely,* 432 N.E.2d at 1375; *Lindley v. State,* (1981) Ind., 426 N.E.2d 398. Incompetency of counsel must be determined on the particular facts of each case, and this Court will not speculate on what might have been the best strategy in a particular case. *Hollonquest v. State,* (1982) Ind., 432 N.E.2d 37.

■ Contrary to defendant's assertions, there is no evidence that defense counsel failed to contact the witnesses whose names defendant had given him. At the hearing on the motion to correct errors, defendant testified that he did not know whether his attorney had contacted the witnesses. None of the witnesses appeared at the hearing to testify to whether they had been contacted or what their testimony would have been at trial. Defendant's claim of ineffective counsel, then, must be based on the fact that none of the suggested witnesses testified at the trial and on the public defender's statements that, as of the week of trial, he had not thought of a defense and that he did not like the intoxication defense. The record indicates, however, that defendant's attorney had been attempting to reach a plea bargain which defendant rejected one week before the trial; defendant's attorney had not been anticipating going to trial because of the expected plea bargain. Furthermore, an attorney is not required to fake a defense if the facts of the case do not support it. *Roberts v. State,* (1977) 266 Ind. 72, 360 N.E.2d 825. Here defendant could remember everything until after he entered the dormitory room. He then forgot what happened until he heard a woman's scream, but remembered running away and staying with a friend. The victim and her roommate testified that defendant walked, talked, and threatened coherently. The record shows that defendant had the foresight to close the drapes in the room and to check the lock on the door. He was not so intoxicated that he could not struggle with the victim or make an immediate and effective escape. It was within trial counsel's judgment to decide that the intoxication defense would not work based on these facts. *Roberts,* 266 Ind. at 78, 360 N.E.2d at 828.

■ Trial counsel's representation was not perfunctory or a mockery of justice. The record indicates that counsel and his assistant met with defendant several times, took depositions, and made discovery requests. The record shows that defense counsel adequately cross-examined witnesses and made appropriate objections and motions on defendant's behalf. Defendant has not met his burden of proving that his trial counsel was ineffective. Consequently, there is no reversible error.

## II, III, IV.

The next three issues defendant raises all arise from the same circumstances and will be dealt with together. Three days before his trial and after he had rejected a proposed plea agreement, defendant informed his counsel that he no longer wanted his assistance. Defense counsel then filed a motion to withdraw and a hearing on the motion was held two days before trial. At that time, the only reason defendant gave for wanting a different attorney was the fact that the court-appointed public defender once had been a prosecutor. When asked what he wanted to do if the motion to withdraw was granted, defendant replied that he was unsure. Defendant did indicate that if the public defender was going to continue as defense attorney, defendant would not appear at trial.

At the pretrial hearing the day of trial, the judge denied the motion to withdraw and defendant's oral motion for a continuance in order to obtain a new attorney. In denying the request for a continuance, the judge noted that defendant had made no showing that his position had changed since he had been found to be indigent and in need of a pauper attorney. The trial judge also found that defendant had made no real effort to obtain new counsel and that the request for a continuance was merely a delay tactic. Defendant then indicated that he wished to remain in his cell and not attend the trial. The trial judge granted

that request after questioning defendant at length to determine if he was knowingly and voluntarily excusing himself from the trial. Finally, defendant moved to proceed *pro se* with the assistance of Richard Lee Owen, an inmate at Indiana State Prison. This motion was denied because Owen was not licensed to practice law in Indiana. Defendant was then given the option of proceeding *pro se* with the public defender as standby counsel. Defendant stated he preferred to remain in his cell.

Defendant now alleges that he was denied his right to self-representation, that the public defender's motion to withdraw should have been granted, and that he did not voluntarily waive his right to be present at trial. He contends that because the trial judge would not allow him to proceed *pro se* without the public defender's assistance, and because he thought his attorney was ineffective, defendant was coerced into waiving his right to be present at trial. We find that defendant's claims are without merit and that, throughout the trial and all procedures leading up to it, defendant's actions appear to be an attempt to create confusion in the record.

■ A trial court may refuse to allow a defendant to replace counsel during or immediately prior to trial. *German v. State*, (1978) 268 Ind. 67, 373 N.E.2d 880; *Magley v. State*, (1975) 263 Ind. 618, 335 N.E.2d 811. Given defendant's one stated reason for wanting new counsel, the lack of evidence that defendant could obtain new counsel, and the lateness of the request, the judge was justified in denying defendant's motion. The denial of an untimely request for change of counsel is not error absent a showing that defendant was prejudiced. *Vacendak v. State*, (1982) Ind., 431 N.E.2d 100. There was no prejudice here. At the hearing on the motion to correct errors defendant alleged ineffective counsel for the first time and testified that he could have obtained new counsel with money from Owen. Defendant admitted that he concealed the information about Owen from the judge. Defendant should not profit now from his own false testimony. More-

over, as discussed above, there is no evidence of ineffective counsel. The trial court did not err in denying the motion to withdraw or the motion for a continuance.

■ Neither was defendant denied his right to self-representation. The record shows that the trial court gave defendant the option of proceeding *pro se* with the public defender as standby counsel. The appointment of standby counsel is clearly "the recommended procedure to preserve defendant's rights when he elects to represent himself." *German v. State*, 268 Ind. at 73, 373 N.E.2d at 883. *See United States v. Dougherty*, (1972 D.C.Cir.) 473 F.2d 1113. Also defendant never moved to represent himself without standby counsel. Rather, he moved to proceed *pro se* with the assistance of Owen, which, as the trial court noted, was impossible. *See Fair v. Given*, (N.D.Ind.1981) 509 F.Supp. 1086.

■ Finally, the record does not support defendant's allegation that he was coerced into waiving his right to be present at trial. The trial judge exhaustively advised defendant of his right to be present at trial and the disadvantages of his absence. The judge questioned defendant at length to determine if he knew what he was doing and allowed defendant to change his mind at any time and appear at trial. The judge also explained that the public defender's prior role as a prosecutor would have no negative effect on his representation of defendant and that the prior experience could add to the defense attorney's competency. Defendant indicated he understood all of the judge's statements but preferred to return to his cell rather than appear in court with the public defender. Defendant's decision was made knowingly and voluntarily.

V.

Defendant next contends that he was denied his constitutional right to present evidence because the trial judge denied a portion of defendant's discovery request. Defendant had asked for the name, address, race, and gender of everyone charged with a felony in Monroe County from January,

1975 to January, 1981, and who could have been charged under the habitual offender statute. Defendant sought this information in order to prove arbitrary and unequal enforcement of the habitual offender statute.

▮ The scope of discovery in criminal cases is generally within the discretion of the trial court. *Kusley v. State,* (1982) Ind., 432 N.E.2d 1337; *Williams v. State,* (1981) Ind., 417 N.E.2d 328. Absent clear error in the judge's decision, it will not be overturned. *Harris v. State,* (1981) Ind., 425 N.E.2d 112. In the present case, the state indicated that it would be very burdensome to comply with defendant's request because the prosecutor's office had no filing system for the prior criminal records of each of the approximately 1,800 persons charged with felonies in the county from 1975 to 1981. Each record would have to be reviewed to determine if the person could have been charged as an habitual offender. Additionally, the state had complied with the other portion of the discovery request by providing a list of all persons actually charged under the habitual offender statute in Monroe County during the six-year span. This list showed that defendant was the only black person to be charged under the statute by the Monroe County Prosecutor. Thus it was within the trial court's discretion to conclude that information on those persons eligible, but not charged as an habitual offender, would not aid defendant's unequal enforcement claim. Based on the questionable materiality of the information sought and the burden that compelling such discovery would place on the state, the trial court's denial of defendant's discovery request was not clear error. *See Williams,* 417 N.E.2d at 331.

### VI.

▮ Defendant's final argument is that the habitual offender charge is unconstitutional on its face and as applied. He first contends that his conviction under the statute violates the due process clause of the Indiana and United States Constitutions because of selective enforcement by the prosecutor. As defendant recognizes, however, to prove a violation of the due process clause based on discrimination, it must be shown that the discrimination exists and is a deliberate policy of the state. *Washington v. Davis,* (1976) 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597. *See also Bordenkircher v. Hayes,* (1978) 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604; *Oyler v. Boles,* (1962) 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446. Although defendant is black, there is *no* evidence that his race was used to selectively charge him as an habitual offender. As previously noted, defendant was the first black person in six years to be charged under the statute.

▮ Defendant also argues that the statute itself is unconstitutional because it violates the separation of powers clause by allowing the prosecutor the discretion to charge someone as an habitual offender. This Court has rejected this argument consistently. *Havens v. State,* (1981) Ind., 429 N.E.2d 618; *Collins v. State,* (1981) Ind., 415 N.E.2d 46; *Eaton v. State,* (1980) Ind., 408 N.E.2d 1281.

Defendant's final contention is that the habitual offender statute unconstitutionally takes away the jury's right to determine the law as well as the facts and, thus, violates Art. 1, § 19 of the Indiana Constitution. The habitual offender statute, as amended provides:

> "(d) A person *is* an habitual offender if the jury ... finds that the state has proved beyond a reasonable doubt that the person had accumulated two [2] prior unrelated felony convictions." Ind.Code § 35–50–2–8 (Burns 1982 Supp.) (emphasis added).

Defendant contends that the statute mandates that the jury find a person is an habitual offender and, therefore, restricts the jury's right to determine the law.

▮ The jury's right to determine the law has some limitations; the jury has no responsibility to assess penalties under our current criminal code. *Harrington v. State,* (1981) Ind., 421 N.E.2d 1113; *Bailey v. State,* (1980) Ind., 412 N.E.2d 56. We

have interpreted Art. 1, § 19 "to mean that the jury is to determine the law necessary to reach its verdict. Sentencing no longer being a part of the verdict, the law regarding sentencing is not to be determined by the jury." *Taylor v. State,* (1981) Ind., 420 N.E.2d 1231, 1233. The habitual offender statute is not a separate crime but only a means of determining a defendant's status in order to decide whether to enhance the sentence on the underlying felony. *Ferguson v. State,* (1980) Ind., 405 N.E.2d 902; *Wise v. State,* (1980) Ind., 400 N.E.2d 114. Thus the habitual offender statute is a means of sentencing and is not a determination of the law necessary to reach the verdict. It is within the legislature's prerogative to determine the status of offenses and the penalties to be assessed. *Griffin v. State,* (1981) Ind., 415 N.E.2d 60; *Comstock v. State,* (1980) Ind., 406 N.E.2d 1164. Therefore, the habitual offender statute is not unconstitutional.

For all of the foregoing reasons, there was no reversible error and the judgment of the trial court is affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.