


**FILED**

Jun 27 2023, 1:04 pm

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 23S-CR-163

## State of Indiana,
*Appellant (Plaintiff below),*

–v–

## Bryan D. Lyons,
*Appellee (Defendant below).*

---

Argued: November 3, 2022 | Decided: June 27, 2023

Interlocutory Appeal from the Lawrence Superior Court
No. 47D01-1707-F1-973
The Honorable John M. Plummer, III, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 21A-CR-2187

---

**Opinion by Justice Molter**

Chief Justice Rush and Justices Massa, Slaughter, and Goff concur.

**Molter, Justice.**

When police were investigating whether Bryan D. Lyons molested his daughter, he agreed with the prosecutor that he would sit for a polygraph and that the State of Indiana could offer the results into evidence at trial in any resulting prosecution. But on the eve of trial, the deputy prosecutor disclosed that she would not do so because she had just learned that when Sergeant Dan Gress administered the exam years earlier, he had concerns about Lyons' mental state, so he unilaterally changed the exam to a "non-stipulated," inadmissible investigatory examination. Sergeant Gress had omitted those facts when testifying at a prior suppression hearing about the admissibility of the polygraph examination and Lyons' related statements, and he failed to provide prosecutors his notes reflecting that change. Based on this late disclosure, the trial court continued the trial and released Lyons from custody. And as a discovery sanction for Sergeant Gress misleading the parties and the court, the judge suppressed the incriminating statements Lyons made to Sergeant Gress immediately after the exam.

Through an interlocutory appeal, the Court of Appeals affirmed with a unanimous, published opinion. The State then requested that we "grant transfer and affirm that the exclusion of admissible evidence as a discovery violation sanction is just only when that violation has been blatant and deliberate or it causes substantial prejudice to the defendant." Pet. to Trans. at 5. We grant transfer today and hold that before excluding evidence as a Trial Rule 37 discovery sanction, a trial court must find that (1) the exclusion is the sole remedy available to avoid substantial prejudice, or (2) that the sanctioned party's culpability reflects an egregious discovery violation. The trial court's order enforced Trial Rule 37 within those limits, so we too must affirm.

# Facts and Procedural History

Three days after Lyons' young daughter reported to her grandmother that Lyons sexually abused her, Bedford Police Detective Kevin Jones interviewed Lyons at the police department. Lyons denied the allegation and agreed to sit for a polygraph. While polygraph results are generally

inadmissible at trial, Lyons, still unrepresented at this point, signed a written stipulation with the prosecutor agreeing the results of his polygraph would be admissible if the State ultimately charged him with a crime.

The State and Lyons agreed Sergeant Gress would administer the polygraph examination at the Jasper Indiana State Police Post a few days later. Detective Jones observed from another room, and Sergeant Gress began the examination by reviewing the polygraph waiver and consent form with Lyons, which advised him of the voluntary nature of the polygraph examination and his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Both Lyons and Sergeant Gress signed the document, and based on the executed stipulation, Sergeant Gress wrote "stipulated" at the top of the polygraph examination form.

Sergeant Gress then questioned Lyons to determine his mental and physical suitability for the examination. In response to that questioning, Lyons revealed he had been diagnosed with generalized anxiety, attention deficit, personality, and bipolar disorders. He also explained he saw "spiritual shadows" that spoke to him two or three days before the examination. Tr. Vol. II at 60–61. While Lyons confirmed he had "a grasp for reality," Sergeant Gress concluded Lyons was not a suitable candidate for an "evidentiary polygraph," the results of which are admissible in court under an agreement between the State and the defendant, so he unilaterally converted the examination to an "investigatory" polygraph, the results of which are not admissible in court. *Id.* at 61. Yet Sergeant Gress did not change the "stipulation" notation on the polygraph examination form to reflect a non-stipulated, investigatory polygraph.

At the end of the examination, Sergeant Gress concluded Lyons' results revealed "significant reactions" to questions about his daughter that were "very close to deception." *Id.* at 66. Sergeant Gress then interviewed Lyons about those reactions, and within minutes Lyons made incriminating statements. Once the interview ended, Sergeant Gress scanned his official report, the polygraph examination form, and his handwritten notes into a

case management system. He placed the original documents in his paper file.

A couple of weeks later, the State charged Lyons with child molesting, a Level 1 felony. The trial court appointed a public defender to represent Lyons, and defense counsel moved to suppress the polygraph results and related statements to the police. Lyons' motion argued, among other things, that he "was illegally coerced into giving an untruthful statement to officers as a result of psychological and mental manipulation," and "[i]n addition to being obtained unconstitutionally, the statements are inherently unreliable and therefore should not be admitted as evidence" at trial. App. Vol. 2 at 108. Counsel also requested a pre-trial hearing to determine whether Lyons' statements "were voluntary and reliable." *Id.*

The trial court set an evidentiary hearing on Lyons' motion to suppress. In preparation, Sergeant Gress reviewed the documents in the case management system and the video of the polygraph examination. He added handwritten notes to the original polygraph examination form in his paper file and, remembering he had changed the exam to a non-stipulated polygraph, he wrote "non-stipulated" at the top. But he did not scan a copy of the document with his new handwritten notes into the case management system. Since the prosecutor's office only had access to those documents in the case management system, it was unaware of his paper file and new handwritten notes.

The parties appeared for the hearing on Lyons' motion, and Sergeant Gress was one of the witnesses. As Sergeant Gress testified, he referred to his notes. He explained that certain circumstances might lead to a determination that a person is not a suitable candidate for a polygraph, such as if they suffered from seizures, heart attacks, or mental issues that might compromise their ability to understand reality. Sergeant Gress recalled that Lyons disclosed his mental health diagnoses and that he saw spiritual shadows which spoke to him, but Sergeant Gress was nonetheless "comfortable" having Lyons sit for the test. Tr. Vol. II at 64. Even though Sergeant Gress testified about the admissible nature of a stipulated polygraph, provided a general step-by-step recollection of the nearly four-and-a-half hours he spent with Lyons before and after the

examination, and relied on his notes while testifying, he never mentioned that he had changed the polygraph to a non-stipulated, investigatory examination because of his concerns about Lyons' mental condition.

After the hearing, and based in part on Sergeant Gress' testimony, the trial court denied Lyons' motion to suppress. Lyons petitioned for an interlocutory appeal, which the trial court certified, but the Court of Appeals declined jurisdiction.

The trial court set a five-day jury trial to begin on July 19, 2021, which was roughly four years after Lyons had been charged and a year after the hearing on the motion to suppress. As the deputy prosecutor prepared for trial, she spoke with Sergeant Gress. For the first time, just a few days before trial, Sergeant Gress revealed to the prosecutor that he had unilaterally changed the polygraph from a stipulated, evidentiary examination to a non-stipulated, investigatory examination based on his concerns about Lyons' mental condition, and he provided a copy of the handwritten notes he made in preparation for the suppression hearing, which reflected that change. The prosecutor promptly provided this information and a copy of the document with Sergeant Gress' handwritten notation to defense counsel.

In light of these developments, Lyons moved to continue his trial, and he asked the trial court to suppress his statements related to the polygraph examination based on the State's untimely disclosure of exculpatory evidence. Although the jury was present and ready for trial, the trial court granted Lyons' motion for continuance and scheduled a suppression hearing. In the meantime, Lyons was released from custody. The trial court also asked the State to investigate whether Sergeant Gress had committed perjury during the suppression hearing, emphasizing that the court found the late disclosure "very troubling" because "Sergeant Gress knew what the issues were when he testified" at the suppression hearing. *Id.* at 103. The court also explained that it believed "there is a substantial likelihood that [the court] has been misled by Sergeant Gress" based on the information then available to the court. *Id.* at 126–27. The court was especially concerned that when "law enforcement in general[] keep

material evidence from the [p]rosecutor," "[t]hat's how innocent people wind up in prison." *Id.* at 127.

A few weeks later, the trial court held another suppression hearing to determine whether Lyons' rights were violated because the State failed to timely disclose that Sergeant Gress "had made a unilateral determination that the polygraph stipulation was invalid" after Lyons revealed he had recently seen shadows on the wall which spoke to him just days before the examination. App. Vol. 3 at 14. At that hearing, Sergeant Gress acknowledged that when he testified at the previous suppression hearing he understood that questions from the State, defense counsel, and the court were all directed at Lyons' mental state during the polygraph; that he referred to his notes during that testimony; and that he never mentioned during his testimony that he had unilaterally changed the polygraph examination from stipulated to non-stipulated. He testified that he assumed the prosecutor was aware of the change because, when he changed the exam from stipulated to non-stipulated, he instructed Detective Jones to inform the prosecutor.

Detective Jones also testified at the hearing, but his recollection was much different. He did not recall Sergeant Gress informing him of a decision to change the examination to a non-stipulated investigatory exam, and he believed he likely would have remembered it if that had happened. In fact, Detective Jones did not recall any time in his career when a polygraph examiner switched an exam from a stipulated evidentiary examination to a non-stipulated investigatory examination, and he was unsure what he would do in those circumstances. He explained that, at a minimum, he would contact the prosecutor's office for guidance because the stipulation is an agreement between the prosecutor and the defendant, and the police are not a party.

Following the hearing, the court entered a detailed order sanctioning the State for its discovery violation by "excluding any and all evidence generated or acquired by S[ergeant] Dan Gress," including Lyons' agreement to take a polygraph, the polygraph, and the post-polygraph interview. *Id.* at 17. After the trial court certified the State's motion for interlocutory appeal, the Court of Appeals accepted jurisdiction and

affirmed. *State v. Lyons*, 189 N.E.3d 605, 607 (Ind. Ct. App. 2022). In a published opinion, a unanimous Court of Appeals explained it was "unconvinced by the State's argument that the discovery violation resulted in no significant prejudice to Lyons's defense because the argument fails to acknowledge the broader implications that pretrial discovery violations may have on a case." *Id.* at 611. For example, the court explained, "[i]t is easy to imagine a scenario in which Lyons entered into a plea agreement with the State before ever finding out that the polygraph results would not have been admissible in a trial." *Id.*

The State then petitioned our Court for transfer, which we now grant, vacating the Court of Appeals' opinion. Ind. Appellate Rule 58(A).

## Standard of Review

Trial courts maintain broad discretion to manage discovery, and that includes sanctioning parties to enforce discovery rules and orders. *Williams v. State*, 714 N.E.2d 644, 649 (Ind. 1999). "We presume that the trial court will act in accord with what is fair and equitable in each case, and thus we will only reverse if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law." *Wright v. Miller*, 989 N.E.2d 324, 330 (Ind. 2013) (quotations omitted).

## Discussion and Decision

The issue before us is whether the trial court abused its discretion by excluding the State's evidence as a discovery sanction. We conclude the trial court did not because it based its sanction on a finding that Sergeant Gress misled the court, and that finding is reasonably supported by the record.

Trial Rule 37 authorizes courts to impose sanctions for discovery violations through "such orders in regard to the failure as are just," Ind. Trial Rule 37(B)(2), including orders prohibiting a party "from introducing designated matters in evidence," T.R. 37(B)(2)(b); *see also Fields v. State*, 679

N.E.2d 1315, 1319 (Ind. 1997).[1] For sanctions addressing a party's late disclosure of evidence, our cases have long recognized three governing principles: (1) we generally treat late disclosures the same whether the State or the defendant committed the discovery violation; (2) the two typical remedies are to continue the trial or to exclude the evidence; and (3) we exclude evidence only if (a) that is the sole remedy available to avoid substantial unfair prejudice, or (b) the discovery violation was intentional, flagrant, in bad faith, or otherwise reprehensible. *Wiseheart v. State*, 491 N.E.2d 985, 988–92 (Ind. 1986);[2] *see also Armstrong v. State*, 499 N.E.2d 189, 191 (Ind. 1986) (discussing the exclusion of evidence for discovery violations which are "flagrant and deliberate," "misleading," or in "bad faith"); *Thompson v. State*, 492 N.E.2d 264, 274 (Ind. 1986) (discussing violations which are "grossly misleading" or "demonstrate[] bad faith").

Courts treat defendants and the State the same because "the office of criminal discovery in Indiana is reciprocity," the discovery rules must "be fairly balanced between the State and the defendant," and the discovery rules are "most effective" through equal treatment. *Wiseheart*, 491 N.E.2d at 990. Courts exclude evidence only as a last resort because that remedy frustrates a trial's truth-seeking function. *Id.* Thus, "[w]hile sanctions for failure to comply with discovery are within the trial court's discretion, the primary factors which a trial court should examine are whether the breach was intentional or in bad faith and whether substantial prejudice has resulted." *Id.* at 988.

---

[1] Criminal Rule 21 provides that Indiana's "rules of trial and appellate procedure shall apply to all criminal proceedings," so long as they do not conflict with any other rules from our Court. Ind. Crim. Rule 21; *see also Minges v. State*, 192 N.E.3d 893, 899 (Ind. 2022) (noting the amendment to Criminal Rule 21, effective March 1, 1997, which incorporated the trial rules into the criminal rules).

[2] At oral argument, defense counsel argued *Wiseheart* does not apply because it predates our amendment to Criminal Rule 21 incorporating Trial Rule 37 into our criminal rules. But we have continued to embrace these governing principles long after we published amended Criminal Rule 21 in 1997. *Cain v. State*, 955 N.E.2d 714, 718 (Ind. 2011); *Rohr v. State*, 866 N.E.2d 242, 245 (Ind. 2007); *S.T. v. State*, 764 N.E.2d 632, 635–36 (Ind. 2002); *Warren v. State*, 725 N.E.2d 828, 832–33 (Ind. 2000); *Fields v. State*, 679 N.E.2d 1315, 1319 (Ind. 1997).

Here, the State acknowledges its disclosure to Lyons that Sergeant Gress had unilaterally changed the polygraph examination to a non-stipulated, investigatory polygraph based on concerns about Lyons' mental condition was exceedingly late under the local rules governing discovery and was therefore a discovery violation. But it argues any prejudice was cured by releasing Lyons from custody and continuing the trial. As for the trial court's concern that the State was on the cusp of admitting the polygraph at trial, and the Court of Appeals' concern that Lyons could have been misled into pleading guilty, the State argues these sorts of "hypothetical" prejudice are not enough to exclude evidence. Pet. to Trans. at 14.

We agree with that much. When considering whether an order excluding evidence is the sole remedy to avoid substantial prejudice, a court can only consider real—not hypothetical—prejudice. And continuing the trial in this case cured the prejudice to Lyons. But the trial court did not base its sanction solely on prejudice to Lyons; it also concluded that Sergeant Gress' conduct amounted to an egregious discovery violation.

The State acknowledges a trial court may exclude evidence where the "discovery violation was blatant and deliberate." *Id.* at 5. That is because "[a] trial judge has the responsibility to direct the trial in a manner which facilitates the ascertainment of truth, ensures fairness, and obtains economy of time and effort commensurate with the rights of both society and the criminal defendant." *Armstrong*, 499 N.E.2d at 191. And "the purpose of sanctioning discovery violations is not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Whitaker v. Becker*, 960 N.E.2d 111, 115 (Ind. 2012) (quotations omitted). So even when there is no remaining prejudice, a trial court may reasonably conclude that excluding evidence is necessary to deter egregious discovery misconduct.

That is what the trial court concluded here. In particular, the court found that Sergeant Gress intentionally "misled" all the parties and the court. App. Vol. 3 at 14. The court based its conclusion on Sergeant Gress'

acknowledgment that when he testified in the first suppression hearing, he understood that defense counsel, the prosecutor, and the trial court were all asking him questions about Lyons' mental state during the polygraph examination, and that was a key focus of the hearing. Discussing Lyons' mental condition specifically, Sergeant Gress testified at that hearing that Lyons did not say "anything different that [Sergeant Gress had not] heard from twenty-five percent of [the] people that take a test," and Sergeant Gress confirmed he "felt comfortable giving [Lyons] a polygraph examination." Tr. Vol. II at 64. Sergeant Gress also testified polygraphs are admissible in court if the defendant and the prosecutor stipulate to their admissibility. Yet Sergeant Gress never divulged that he had unilaterally changed the polygraph to a non-stipulated, inadmissible investigatory examination based on his concerns about Lyons' mental condition, and he never provided the prosecutor his notes to the same effect, until roughly a year later on the eve of trial.

The State downplays this as a case of misfeasance rather than malfeasance. But that is not what the trial court concluded. Instead, the trial court concluded that Sergeant Gress' misleading omissions were so egregious that the State should undertake a perjury investigation. And the trial judge explained to the State:

> I hope that the Prosecutor understands that this is not a personal ruling against the State but it is a professional decision that the Court [makes] to protect the rights of the accused, to make sure that the trial has integrity, to make sure that the lawyers have integrity in this court, to make sure that we don't have false testimony presented at any time in this court, especially by people as powerful as Sergeant Gress. And I would hope that the prosecutors understand that ruling because the integrity of these proceedings is—means everything.

*Id.* at 127.

From the trial court's perspective, part of what made this an egregious discovery violation warranting the exclusion of Lyons' statements to

Sergeant Gress was the highly unusual context for both the statements and Sergeant Gress' subsequent omissions. Lyons, who was not represented by counsel, signed the stipulation around the same time he believed shadows were speaking to him. The court credited the testimony of a defense polygraph expert concluding "that when a polygraph examiner determines in the pre-polygraph interview that the examinee has mental issues to such an extent as to render the stipulation invalid, the polygraph examiner should immediately terminate the encounter and end the meeting." App. Vol. 3 at 15. After all, as the court explained, Sergeant Gress "changing the terms of the contract unilaterally without the permission of the prosecutor or the Defendant frustrated the entire purpose of the Defendant meeting with [Sergeant] Gress." *Id.* at 17. And "but for the Defendant entering into the stipulated agreement (i.e. the contract), he would have never spoken to [Sergeant] Gress." *Id.*

While the State has not concluded Sergeant Gress' omissions rose to the level of perjury, it has acknowledged its own frustration and concerns with Sergeant Gress' failure to timely share information with the prosecutors. Sergeant Gress' only explanation was that he was relying on Detective Jones to relay to the prosecutor that the polygraph was no longer a stipulated evidentiary exam, but Detective Jones testified he does not recall any such conversation. Just the opposite, Detective Jones does not recall any point in his career—including this incident—when a polygraph examiner informed him that the examiner was changing a stipulated, evidentiary exam to a non-stipulated, investigatory exam. And counting on Detective Jones to relay the information to the prosecutor still does not explain why Sergeant Gress omitted this critical fact from his own testimony at the first suppression hearing, which was all about his polygraph examination.

In sum, our prior cases have explained that trial courts may exclude the State's evidence when a discovery violation is "grossly misleading or demonstrates bad faith." *Thompson*, 492 N.E.2d at 274. Because the trial court found that level of culpability here, and the record supports (even if it does not compel) that conclusion, the trial court did not abuse its discretion. *See, e.g.*, *Whitaker*, 960 N.E.2d at 117 (holding that the trial court did not abuse its discretion by excluding evidence when a party provided

"false and misleading" responses to discovery requests); *Cameron v. State*, 274 Ind. 436, 444, 412 N.E.2d 1194, 1199 (1980) ("Where the violation is grossly misleading or demonstrates bad faith, exclusion of the evidence may be required.").

## Conclusion

For these reasons, we affirm the trial court's Order excluding the State's evidence as a discovery sanction.

Rush, C.J., and Massa, Slaughter, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANT
Theodore E. Rokita
Attorney General of Indiana

Angela Sanchez
Jodi Kathryn Stein
Andrew Kobe
Office of the Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
Joel C. Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana