**Jeffrey SNYDER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 73A05–9410–PC–395.**

Court of Appeals of Indiana.

July 31, 1995.

35–50–1–2(b) is applicable in this case because its effective date was prior to Newsome's trial and sentencing.

Susan K. Carpenter, Public Defender, Amy E. Karozos, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Christopher L. Lafuse, Deputy Atty. Gen., Indianapolis, for appellee.

## *OPINION*

BARTEAU, Judge.

Jeffrey Snyder raises several issues in his appeal from the denial of his Petition for Post–Conviction Relief. We find as dispositive the issue of whether he voluntarily and intelligently waived his right to a jury determination of his status as an habitual offender. We heard oral argument on this issue on June 21, 1995, in Indianapolis.

## *FACTS*

Snyder was charged by Information with attempted murder, two counts of battery, escape, criminal recklessness, and resisting law enforcement. There was also an allegation that Snyder was an habitual offender.

Pursuant to a written plea agreement, Snyder pleaded guilty to criminal recklessness and one count of battery. The plea agreement left the habitual offender allegation pending, and Snyder understood that his sentence could be enhanced by an additional thirty years thereunder. When Snyder entered his guilty plea, the trial court advised Snyder of his rights as required by *Boykin v.*

*Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, and Ind.Code 35–35–1–2. Snyder was informed that he was waiving his right to a jury trial on the charges of criminal recklessness and battery. He was sentenced to seven years for criminal recklessness and four years for battery, served concurrently.

The habitual offender hearing was held before the court at the time of sentencing. The State presented proof that Snyder was an habitual offender. The trial court determined that Snyder was an habitual offender, and enhanced the seven-year criminal recklessness sentence by thirty years.

The Post–Conviction Relief (PCR) court specifically found that Snyder was not informed that, by pleading guilty to the underlying offenses of criminal recklessness and battery, he was waiving his right to have a jury determine his status as an habitual offender. However, the PCR court concluded that Snyder was not entitled to be advised of this, and affirmed his conviction.

### DISCUSSION

 Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1, § 5. The PCR court entered findings of fact and conclusions of law. Thus, we cannot affirm the judgment on any legal basis; rather, we must determine whether the PCR court's findings are sufficient to support the judgment. In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. The judgment will be reversed only when clearly erroneous, i.e. when the judgment is unsupported by the findings of fact and conclusions of law entered on the findings. *Douglas v. State* (1994), Ind.App., 634 N.E.2d 811, *trans. denied, on reh'g*, 640 N.E.2d 73.

Snyder contends that his plea of guilty to the charges of criminal recklessness and battery was involuntary and unintelligent because he was unaware and was not advised that, by pleading guilty to those charges, he waived his right to a jury determination of his status as an habitual offender. Indiana Code 35–50–2–8(c) establishes the procedure through which one's habitual offender status is determined:

> If the person was convicted of the felony in a jury trial, the jury shall reconvene for the sentencing hearing. If the trial was to the court or the judgment was entered on a guilty plea, the court alone shall conduct the sentencing hearing under IC 35–38–1–3.

In other words, when a defendant alleged to be an habitual offender is tried by a jury on the underlying offense, the jury also determines his status as an habitual offender. However, if the trial on the underlying charges is before the bench, or if the accused pleads guilty, the habitual offender status is determined by the court.

The United States Supreme Court and the Indiana legislature have set forth the advisements an accused is to be given when he enters a plea of guilty. *Boykin*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274; I.C. 35–35–1–2. *Boykin* specifies that an accused is to be advised that by pleading guilty he waives his right to a jury trial, right of confrontation, and right against self-incrimination. Indiana Code 35–35–1–2 also specifies that an accused is to be advised of these three rights, but also specifies advisements in addition to those enumerated in *Boykin*. It reads in pertinent part:

> (a) The court shall not accept a plea of guilty ... without first determining that the defendant:
>
> (1) understands the nature of the crime against him;
>
> (2) has been informed that by his plea he waives his rights to:
>
> > (A) a public and speedy trial by jury;
> >
> > (B) confront and cross-examine the witnesses against him;
> >
> > (C) have compulsory process for obtaining witnesses against him;
> >
> > (D) require the state to prove his guilt beyond a reasonable doubt at a trial at which the defendant may not be compelled to testify against himself;
>
> (3) has been informed of the maximum possible sentence and minimum sentence

for the crime charged and any possible increased sentence by reason of the fact of a prior conviction or convictions, and any possibility of the imposition of consecutive sentences; and

(4) has been informed that if:

(A) there is a plea agreement as defined by 35–35–3–1; and

(B) the court accepts the plea;

the court is bound by the terms of the plea agreement.

\* \* \* \* \* \*

(c) Any variance from the requirements of this section that does not violate a constitutional right of the defendant is not a basis for setting aside a plea of guilty.

I.C. 35–35–1–2(a), (c).

■ The Indiana Supreme Court set forth the test to determine whether one's guilty plea is entered voluntarily and intelligently in *White v. State* (1986), Ind., 497 N.E.2d 893. If the record does not show that the accused was advised or knew that his guilty plea waived his right to a jury trial, *Boykin* requires that the conviction be vacated. 497 N.E.2d at 905. The questions presented in this case are whether the habitual offender jury hearing is a jury trial, and if so, whether due process requires that an accused be advised or made aware that his guilty plea to an underlying offense waives his right to the jury trial of a pending habitual offender allegation.

■ The State noted during oral argument that one's status as an habitual offender is not a crime, but rather a determination used to enhance the sentence imposed for a conviction on an underlying offense. *Ferguson v. State* (1980), 273 Ind. 468, 405 N.E.2d 902, 908, *reh'g denied.* As such, the habitual offender proceeding is not a trial on a charged crime. *Id.* Rather, the State argued, it is akin to the death penalty phase used in the prosecution of capital offenses. And, our Supreme Court has determined

that the jury hearing during the death penalty phase of a capital trial is not a jury trial for purposes of double jeopardy. *Schiro v. State* (1983), Ind., 451 N.E.2d 1047, 1055–56, *cert. denied,* 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed.2d 699. The State concluded that the jury habitual offender proceeding is not a trial.

However, the habitual offender proceeding is very different from the death penalty phase in a capital trial. In *Schiro,* our Supreme Court concluded that the death penalty phase did not violate the prohibition against double jeopardy because (1) the death penalty jury only renders a recommendation that is not final and binding upon the sentencing judge, and (2) the death penalty jury's recommendation does not necessarily reflect that the jury determined the State succeeded or failed to carry its burden of proof. 451 N.E.2d at 1055–56. These two factors are not present in the habitual offender proceeding.

First, under I.C. 35–50–2–8, once the jury determines that an accused is an habitual offender, the law *mandates* that the trial court enhance the sentence imposed for an underlying offense.[1] The trial judge has no discretion on whether to enhance the sentence. The jury's finding is final, and its determination that the accused is an habitual offender is binding on the court.

■ Second, the jury's determination of one's habitual offender status is conclusive of whether the State carried its burden of proof. Indiana Code 35–50–2–8(d) states:

A person is a habitual offender if the jury (if the hearing is by jury) or the court (if the hearing is to the court alone) finds that the state has proved beyond a reasonable doubt that the person had accumulated two (2) prior unrelated felony convictions.

The State must prove one's habitual offender status by proof beyond a reasonable doubt. *Lingler v. State* (1994), Ind.App., 635 N.E.2d 1102, 1107–08, *reh'g denied.* If the State

---

1. At the time of Snyder's conviction and sentencing, I.C. 35–50–2–8 required that Snyder's sentence be enhanced by 30 years upon being determined to be an habitual offender. In 1985, I.C. 35–50–2–8 was amended to give the trial court the discretion to reduce the habitual offender enhancement by ten years if one of the prior felony convictions was a Class D felony, but this amendment is inapplicable to Snyder. Regardless, both versions of I.C. 35–50–2–8 make the sentence enhancement mandatory.

presents insufficient evidence to carry this burden, "[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Id.* at 1108 (citing *Tibbs v. Florida* (1982), 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652; *Burks v. United States* (1978), 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1). The habitual offender proceeding is an evidentiary hearing in every sense, and the jury's decision therein is conclusive of whether the State satisfied its burden of proof. The habitual offender jury hearing is a jury trial within the meaning of I.C. 35-35-1-2.

■ Snyder argues that one's waiver of the right to a jury trial on the habitual offender status is entitled to the same safeguards as the right to a trial by jury identified in *Boykin*. But, the *Boykin* decision only addressed the waiver of the constitutional right to a jury trial. 395 U.S. at 243, 89 S.Ct. at 1712. As our Supreme Court noted in *Dyer v. State* (1984), Ind., 460 N.E.2d 511, 512, "[t]he right to have a jury act as the trier of fact at a felony sentencing hearing at which the habitual offender status of the defendant is in issue exists by virtue of our statutory law."

Snyder correctly notes that our Supreme Court did not hold in *Dyer* that a jury hearing in the habitual offender proceedings is not required under constitutional due process. To this end, Snyder contends that, while the right to a jury hearing in habitual offender proceedings is found in our statutory law, the United States Constitution and the Indiana Constitution mandate that an accused be afforded the opportunity to have the habitual offender allegation tried by jury. Because the habitual offender statute provides for a jury trial, we need not resolve this question today. However, we agree with Snyder that, regardless of whether the right to a jury trial in habitual offender proceedings is created solely by statute or is rooted in the United States or Indiana Constitutions, the safeguards and precautions attendant to the waiver of a jury trial apply to waiver of the habitual offender jury hearing.

■ The law is clear that the sentence enhancement imposed upon an habitual offender is a significant infringement upon one's liberty interest, and one charged as such must be afforded due process safeguards.

> [A]llegations of habitual criminal must contain all of the procedural matters and safeguards of the original and underlying charges in that they are brought by sworn affidavit contained in an information and endorsed by the prosecuting attorney, setting out the facts sufficient and adequate for the defendant to defend himself and giving the defendant an opportunity to plead to such allegations.

*Griffin v. State* (1982), Ind., 439 N.E.2d 160, 165. The significant liberty interest at stake in an habitual offender allegation requires the same procedural safeguards as if the accused were charged with a crime. As noted by our Supreme Court:

> [T]he potential for an additional thirty year sentence requires the same procedural safeguards as those required for any other charge that takes away an individual's liberty.

*Id.* at 163. The thirty-year sentence enhancement under the habitual offender status is a significant infringement upon one's liberty, and in fact may impose a greater penalty than the sentence on the underlying offense. Indeed, Snyder's sentence enhancement under the habitual offender determination increased his effective sentence of seven-years to thirty-seven years, a period of incarceration more than five times greater than that imposed for the underlying offenses.

In light of the serious ramifications of the habitual offender determination, the task assigned to the jury in the habitual offender evidentiary hearing is as critical as that of the jury presiding in a trial of a charged crime. "Like any other jury it has the discretion to disbelieve or discredit any or all of the State's evidence, no matter how unimpeachable." *Owens v. State* (1981), Ind., 427 N.E.2d 880, 886, *reh'g denied* (citing *Hicks v. State* (1981), Ind., 426 N.E.2d 411). And, the jury plays a significant role in guarding against improper infringement upon an ac-

cused's liberty interests. As Justice DeBruler noted:

> The commands of past and present habitual offender statutes are exceptional in severity. In recognition of this severity the legislature requires habitual offender status to be pleaded like an outright criminal charge, that proof be made beyond a reasonable doubt, and that the right to trial by jury be afforded. I.C. § 35–50–2–8. The policy gives the accused the same protection from misuse of the trial process of determining habitual offender status that are afforded in the trial process of determining guilt. It even sanctions exercise of the jury nullification power.

*Weatherford v. State* (1993), Ind., 619 N.E.2d 915, 918, *reh'g denied* (dissenting opinion) (citing Ind. Const. art. I, § 19; *Clark v. State* (1990), Ind., 561 N.E.2d 759).

■ "What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin*, 395 U.S. at 243–44, 89 S.Ct. at 1712. Where an accused pleads guilty to an underlying offense but leaves an habitual offender allegation pending, it is essential that he understand the ramifications of his guilty plea and be aware of the rights he is waiving. If the record does not show that the accused was advised or knew that his guilty plea to the underlying offense waived his right to a jury determination of a pending habitual offender allegation, the conviction on the underlying offense must be vacated.[2] *Cf. White*, 497 N.E.2d at 905.

■ The evidence supports the PCR court's finding that Snyder was not advised that his guilty plea to the charges of criminal recklessness and battery waived his right to a jury trial on the pending habitual offender allegation. However, the PCR court incorrectly concluded that Snyder was not entitled to be advised of this waiver. The decision of the PCR court is clearly erroneous. We hold

that Snyder was entitled to be informed or otherwise made aware that his guilty plea to the underlying offenses waived his right to a jury trial on the pending habitual offender allegation. Snyder's guilty plea to the charges of criminal recklessness and battery was unintelligent and involuntary, and his convictions entered pursuant to the guilty plea are hereby vacated.

REVERSED.

SHARPNACK, C.J., and NAJAM, J., concur.

---

2. This is to be distinguished from the situation in which a defendant pleads guilty to both the underlying offenses *and* an habitual offender allegation. In that case, the court's advisement that the accused is waiving his right to a jury trial on all charges sufficiently informs the defendant that he is waiving his right to a jury trial on the habitual offender charge.