Gary T. SEAY, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 82A01–9604–PC–139.

Court of Appeals of Indiana.

Nov. 8, 1996.

Transfer Granted Jan. 15, 1997.

Susan K. Carpenter, Public Defender of Indiana, Cynthia Maricle Russell, Deputy Public Defender, Indianapolis, for Appellant.

Pamela Carter, Attorney General of Indiana, Michael K. Ausbrook, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

In this case, we are asked to consider the constitutional role of the jury in an habitual offender proceeding. Gary T. Seay appeals from the trial court's denial of his petition for post-conviction relief. In 1987, following a jury trial, Seay was convicted of Dealing in a Schedule II Controlled Substance, as a Class B felony, and of Dealing in Cocaine, as a Class B felony. He was also found to be an Habitual Offender. The trial court sentenced Seay to 20 years imprisonment for each of the convictions and enhanced Seay's sentence for dealing in cocaine by 30 years for the habitual offender adjudication. The court ordered the sentences to be served

concurrently for a total executed term of 50 years imprisonment.

On direct appeal, the Indiana Supreme Court affirmed Seay's convictions and the habitual offender finding. *Seay v. State*, 529 N.E.2d 106 (Ind.1988). Seay filed his Petition for Post–Conviction Relief which was subsequently amended. Following an evidentiary hearing, the post-conviction court entered its extensive Findings of Fact, Conclusions of Law and Judgment in which it denied Seay's petition. Seay now appeals.

We affirm.

## ISSUES

Seay presents two issues for our review which we restate as:

1. Whether the court committed fundamental error when it instructed the jury on its role during the habitual offender proceeding.

2. Whether Seay was denied the effective assistance of trial and appellate counsel.

## DISCUSSION AND DECISION

### Standard of Review

■ The purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at the trial level. *Grey v. State*, 553 N.E.2d 1196, 1197 (Ind. 1990). The appellant bears the burden of establishing his grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1, § 5; *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind.1993). To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford*, 619 N.E.2d at 917.

### Issue One: Jury Instructions

The trial court read the following instructions in the habitual offender proceeding:

COURT'S INSTRUCTION NO. 6 [preliminary instruction]

Since this is a sentencing case, the Constitution of the State of Indiana makes you the judges of only the facts.

COURT'S INSTRUCTION NO. 23 [final instruction]

These instructions do not contain any information concerning the penalties that could be imposed upon a conviction. The Law has been so written that you may make your decisions without being influenced by the apparent severity or leniency of the sentence. Since an Habitual Offender proceeding pertains only to sentencing the jury is restricted to determining the facts only and not the law during such a proceeding.

Record at 253, 271. Seay challenges these instructions and contends that in the habitual offender proceeding the jury was not permitted to fulfill its constitutional role under Article 1, Section 19 of the Indiana Constitution. This issue has been considered in various permutations both by our supreme court and by this court. However, the precise question raised in this appeal has not been decided by a majority of justices or judges on appeal.[1]

Article 1, Section 19 of the Indiana Constitution provides, "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." Indiana is one of only three states that incorporates such a provision into its constitution. *See* Randall T. Shepard, "Second Wind for the Indiana Bill of Rights," 22 IND. L.REV. 575, 582 n. 42 (1989).[2] Our supreme court has recognized that this provision is a vital part of the "full protection of the rights of the criminal defendant." *Pritchard v. State*, 248 Ind. 566, 576, 230 N.E.2d 416, 421 (1967).[3] A similar provi-

---

1. Our supreme court was presented with an almost identical issue in *Duff v. State*, 508 N.E.2d 17 (Ind.1987) (four justices participating). However, there was no majority opinion of the court.

2. Maryland and Georgia have similar provisions. MD. DECLARATION OF RTS. art. 23; GA. CONST. art. I, § 2–111(a).

3. The *Pritchard* court stated:

It appears to this Court that Art. I, § 19 taken in connection with the presumption of innocence is far from an outmoded, archaic anachronism. Rather, despite its venerable age, it appears to be in the vanguard of modern thinking with regard to the full protection of the rights of the criminal defendant.

sion, codified at Indiana Code § 35–37–2–2(5), states in part:

> In charging the jury, the court must state to them all matters of law which are necessary for their information in giving their verdict. The judge shall inform the jury that they are the exclusive judges of all questions of fact, and that they have a right, also, to determine the law.

▆▆ Here, the challenged instructions were read during Seay's habitual offender proceeding. The habitual offender statute does not establish a separate crime but is a means of determining a defendant's status in order to decide whether to enhance the sentence on the underlying felony. *Jones v. State*, 449 N.E.2d 1060, 1066 (Ind.1983). When a defendant alleged to be an habitual offender is tried by a jury on the underlying offense, the jury also determines his status as an habitual offender. IND. CODE § 35–50–2–8(c); *Snyder v. State*, 654 N.E.2d 15, 17 (Ind.Ct.App.1995), *aff'd in part, rev'd in part on other grounds*, 668 N.E.2d 1214 (Ind. 1996). The questions presented to the jury in such a proceeding are narrowly circumscribed. A person is an habitual offender if the jury finds that the State has proved beyond a reasonable doubt that the person has accumulated two prior unrelated felony convictions. IND. CODE § 35–50–2–8(d). The State is also required to prove the proper sequence, that the second offense was committed after conviction and sentencing on the first and that the underlying offense was committed after conviction and sentencing on the second. *See State v. Brooke*, 565 N.E.2d 754, 756 (Ind.1991).

Citing *Jones*, 449 N.E.2d 1060, the State argues that Article 1, Section 19 does not apply in habitual offender proceedings. In *Jones*, our supreme court considered whether the habitual offender statute unconstitutionally takes away the jury's right to determine the law as well as the facts in violation of Article 1, Section 19. Noting that the habitual offender statute "is a means of sentencing," the court said:

*Pritchard*, 248 Ind. at 576, 230 N.E.2d at 421.

4. The instruction being reviewed stated:

We have interpreted Art. 1, § 19 "to mean that the jury is to determine the law necessary to reach its verdict. Sentencing no longer being a part of the verdict, the law regarding sentencing is not to be determined by the jury."

*Id.* at 1065–66 (quoting *Taylor v. State*, 420 N.E.2d 1231, 1233 (Ind.1981)). The *Jones* court considered the text of the habitual offender statute and held that the statute is not unconstitutional under Article 1, Section 19. *Id.* at 1066. *Jones* addressed the statutory function of the jury in an habitual offender criminal proceeding. The court did not consider a jury instruction. Neither did it hold that Article 1, Section 19 does not apply in an habitual offender proceeding.

The statement from *Jones* that "the law regarding sentencing is not to be determined by the jury" is quoted from *Taylor*, 420 N.E.2d at 1233, in which the supreme court considered three tendered jury instructions. The defendant in *Taylor* had been convicted of robbery and found to be an habitual offender. *Id.* at 1232. The statement was part of a discussion about whether trial courts should inform juries of possible penalties arising from their guilty verdicts. *Id.* at 1233.

▆▆ Read in context, the clause means only that, once the jury determines a defendant's status as an habitual offender, the sentence to be imposed is fixed by the legislature, not by the jury. *See Mers v. State*, 496 N.E.2d 75, 81 (Ind.1986). The language in the instructions challenged here tracks the *Taylor* decision. However, even language taken from a supreme court decision may be misleading and erroneous when given *as a jury instruction*. *See David v. State*, 669 N.E.2d 390, 391–92 (Ind.1996) (citing *Chandler v. State*, 581 N.E.2d 1233 (Ind.1991)).

The *Taylor* court also reviewed whether it was error for a trial court to refuse a tendered instruction charging in part that the jury had the right to independently determine the law. *Taylor*, 420 N.E.2d at 1233.[4]

"The Constitution of Indiana provides that in all criminal cases the jury shall judge and determine the law as well as the facts. It is the duty of the court to instruct you on the law

In a unanimous decision, the supreme court held that the refusal was not error because the instruction was adequately covered by the court's own charge which stated in pertinent part, "[u]nder the law of this State you are the sole judges of both the law and evidence...." *Id.* at 1233–34. The court did not differentiate the constitutional role of the jury in the habitual offender proceeding from its role in the trial of the underlying offense. Implicit in *Taylor* is an acknowledgment that Article 1, Section 19 applies in both.

In a similar case, some nine years after *Taylor*, our supreme court reviewed the failure of a trial court to explicitly inform jurors during the habitual offender phase that they were to determine both the law and the facts as required by Article 1, Section 19 and Indiana Code § 35–37–2–2(5). *Clark v. State*, 561 N.E.2d 759, 764 (Ind.1990). In *Clark*, the defendant neither objected to the omission nor tendered further instructions on this issue. The court considered the instructions as a whole and the impact of the entire charge and noted that "on more than one occasion" jurors were instructed that they were "the exclusive arbiter of the facts and that they were to determine the law." *Id.* Thus, there was no fundamental error. *Id.* Again in *Clark*, as in *Taylor*, the court recognized implicitly that Article 1, Section 19 applies in both the trial on the underlying offense and in the habitual offender proceeding.

Habitual offender hearings are characteristically much shorter and less complex than are trials, but they are no less momentous. The task assigned to the jury in the habitual offender hearing is as critical as that of the jury sitting in a trial of a charged crime. *Snyder*, 654 N.E.2d at 19. Once the jury finds that an accused is an habitual offender, the law mandates that the court enhance the sentence imposed for the underlying offense. IND. CODE § 35–50–2–8(e); *Compare Mers*, 496 N.E.2d at 81 (jury role in death penalty proceedings is to make recommendation regarding penalty). As with any other

jury, the jury in an habitual offender proceeding "has the discretion to disbelieve or discredit any or all of the State's evidence, no matter how unimpeachable." *Snyder*, 654 N.E.2d at 19 (quoting *Owens v. State*, 427 N.E.2d 880, 886 (Ind.1981)).

The habitual offender hearing is a jury trial and jurors play a significant role in guarding against an improper infringement upon an accused's liberty interests. *Id.* at 19–20. As Justice DeBruler explained:

> The commands of past and present habitual offender statutes are exceptional in their severity. In recognition of this severity the legislature requires habitual offender status to be pleaded like an outright criminal charge, that proof be made beyond a reasonable doubt, and that the right to trial by jury be afforded. I.C. § 35–50–2–8. The policy gives the accused the same protection from misuse of the trial process of determining habitual offender status that are afforded in the trial process of determining guilt. It even sanctions exercise of the jury nullification power.

*Weatherford*, 619 N.E.2d at 918 (DeBruler, J., dissenting).

■ While the issues to be determined in an habitual offender proceeding are narrowly defined by statute, we agree with Justice DeBruler and with Justice Dickson that the jury has full authority within that sphere to perform its constitutional function. *See Duff v. State*, 508 N.E.2d 17, 24 (Ind.1987) (Dickson, J., dissenting) (recognized the "unquestioned right of a jury to refuse to find defendant a habitual offender even with uncontroverted proof of the prerequisite prior felony convictions"). We find nothing in the habitual offender statute to suggest that the legislature intended for the jury's constitutional role to be diminished in an habitual offender proceeding. Indeed, a statute may not be in derogation of rights and safeguards secured by the constitution. *Kinnaird v. State*, 251 Ind. 506, 513, 242 N.E.2d 500, 504 (1968).

governing the case, and you should give the court's instructions respectful attention. However, you have the right to independently determine the law. The instructions given are

for your guidance and information and you should give the instructions such consideration and respect as you deem them entitled to." *Taylor*, 420 N.E.2d at 1233.

■ The constitution is emphatic that the right of the jury to determine the law as well as the facts applies "[i]n all criminal cases whatever." IND. CONST. art. 1, § 19 (emphasis added). "All" is defined as "the whole extent or duration of ... each and every one of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 54 (1976). "Whatever" is defined as "no matter what ... of any kind at all." Id. at 2600. We believe that the terms "all" and "whatever" mean what they say. In interpreting the Indiana Constitution, our analysis is controlled by the text itself. Price v. State, 622 N.E.2d 954, 957 (Ind. 1993). Article 1, Section 19 does not speak of verdicts but of "criminal cases." Where a significant liberty interest is involved, there is no constitutional distinction between a verdict and an habitual offender adjudication.

■ An habitual offender charge, derived from the criminal code, is pleaded as an "outright criminal charge." Weatherford, 619 N.E.2d at 918 (DeBruler, J., dissenting). The habitual offender proceeding occurs within a criminal case in a separate count under the same cause number as the underlying felony. For these reasons, we conclude that the instructions at issue, which vary conspicuously from the instruction given during Seay's trial on the underlying offense,[5] were erroneous.

■ Here, Seay did not make a contemporaneous objection to the instructions he now challenges. Thus, any alleged error is not reviewable on appeal unless that error is deemed "fundamental." See Ind.Crim. Rule 8(B); Winegeart v. State, 665 N.E.2d 893, 896 (Ind.1996); Lacey v. State, 670 N.E.2d 1299, 1301 (Ind.Ct.App.1996). To qualify as "fundamental," the error must be so prejudicial to the rights of a defendant as to make a fair proceeding impossible. See Winegeart, 665 N.E.2d at 896.

■ In order to invoke the doctrine of fundamental error, it is not enough that a constitutional right be implicated. Williams v. State, 464 N.E.2d 893, 894 (Ind.1984). Rather, Seay must prove an error "such that the defendant could not possibly have had a fair trial or such that this court is left with the conviction that the verdict or sentence is clearly wrong or of such dubious validity that justice cannot permit it to stand." Stewart v. State, 567 N.E.2d 171, 174 (Ind.Ct.App.1991), trans. denied.

■ The record demonstrates that, during the habitual offender proceeding, the trial court gave eleven preliminary instructions and fifteen final instructions. These instructions addressed the alleged prior convictions and sentences that formed the basis of the habitual offender charge, the definition of "felony conviction," and the sequence of events required to support an habitual offender finding. The court also informed the jury about the State's burden of proof and the presumption of innocence.

Jury instructions are to be read as a whole. Kingery v. State, 659 N.E.2d 490, 494 (Ind.1995). Considering the issues to be determined in the habitual offender proceeding and the entire charge to the jury, we are not convinced that the instructions now challenged made it impossible for Seay to have had a fair hearing or that Seay's sentence for the habitual offender finding was clearly wrong. See Duff, 508 N.E.2d at 23–24 (Dickson, J., dissenting) (concluded that instruction "appear[ed] inconsistent with the Indiana Constitution" but inconsistency was insufficient to mislead jury or prejudice defendant). Accordingly, Seay's claim of fundamental error must fail.

### Issue Two: Effective Assistance of Counsel

Seay also contends that he did not receive the effective assistance of both trial and appellate counsel.[6] He asserts that trial counsel was ineffective because he did not object

---

5. The trial court instructed the jury during Seay's trial that "the Constitution of the State of Indiana makes you the judges of both the law and the facts." Record at 209.

6. While the general rule is that a claim of ineffective assistance of trial counsel must be raised on direct appeal, the same attorney represented Seay at trial and on appeal, and it is unreasonable to believe that appellate counsel would have raised the question of his own competency. Askew v. State, 500 N.E.2d 1219, 1220 (Ind.1986). Therefore, we consider whether Seay was denied the effective assistance of trial counsel.

to Instruction Numbers 6 and 23 and did not tender instructions in lieu of them. Seay argues that appellate counsel was ineffective for failing to raise the fundamental error issue on appeal. We disagree with both assertions.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's performance failed to meet an objective standard of reasonableness as measured by predominate professional norms, and (2) such deficient performance so prejudiced the defendant as a to deprive him of a fair trial. *Spranger v. State,* 650 N.E.2d 1117, 1121 (Ind.1995) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).[7] To prove that counsel's performance resulted in prejudice which amounted to the deprivation of a fair trial, the defendant must show a reasonable probability that, but for counsel's deficient performance, the result would have been different. *Id.*

 Where an ineffective assistance of trial counsel claim is predicated upon the failure to make an objection, it generally must be shown that, had the objection been made, the trial court would have sustained the objection. *Stroud v. State,* 587 N.E.2d 1335, 1338 (Ind.Ct.App.1992), *trans. denied.* For purposes of this argument we assume that the court would have sustained an objection to the challenged instructions, and we further assume that the court would have given substitute instructions. Nonetheless, there is no reasonable likelihood that, without the challenged instructions or with substitute instructions, the result of the proceeding would have been different. Seay has failed to satisfy the second prong of the *Strickland* test. Hence, Seay was not denied the effective assistance of trial counsel.

 Likewise, appellate counsel was not ineffective. As discussed previously, the trial court did not commit fundamental error in instructing the jury. Counsel is not ineffective for failing to present an issue on appeal that would have been unsuccessful. *Lyons v. State,* 600 N.E.2d 560, 567 (Ind.Ct.App.1992).

7. The effectiveness of appellate counsel is governed by the same standard as is applied to trial

We hold that the trial court properly denied Seay's petition for post-conviction relief.

Affirmed.

BAKER, J., concurs.

HOFFMAN, J., concurs in result with opinion.

HOFFMAN, Judge, concurring in result.

I concur in the result. I disagree with the majority's determination that Article 1, Section 19 is fully applicable to habitual offender proceedings. The court in *Jones v. State,* 449 N.E.2d 1060 (Ind.1983) analyzed whether mandatory language in the habitual offender statute interfered with the jury's right to determine the law and the facts pursuant to Article 1, Section 19. Although the *Jones* court did not address explicitly the jury instruction question presented here, the reasoning drew a line of demarcation between proceedings to the point of a verdict and the sentencing proceedings. The court concluded *inter alia* that the "law regarding sentencing is not to be determined by the jury." *Jones,* 449 N.E.2d at 1066.

The majority's emphasis on the language recognizing the jury nullification power is misplaced. Inherent in matters presented to a jury is the power to disbelieve or discredit the evidence. That power is sufficient to safeguard the rights of those who have been convicted of a crime, as is the case when habitual offender status is being determined. Habitual offender status will not become an issue until a conviction for an underlying offense is in place and then only at the sentencing stage. This system allows juries to decide whether the State adequately proved factual matters such as the requisite previous convictions and the identification of the offender as the one who committed the previous crimes. The law can be mandatory as to sentencing without offending Article 1, Section 19 inasmuch as its constitutional requirements are met during the proceedings leading to a conviction.

counsel. *Hackett v. State,* 661 N.E.2d 1231, 1233 (Ind.Ct.App.1996), *trans. denied.*

Because I do not believe a constitutional error occurred in instructing the jury, I concur in the result reached by the majority.