Maurice·K. SMITH, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 64A03–0306–CR–204.

Court of Appeals of Indiana.

March 23, 2004.

James V. Tsoutsouris, Porter County Public Defender, Matthew D. Soliday, Deputy Public Defender, Valparaiso, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Senior Judge.

### Case Summary

Appellant-defendant Maurice K. Smith appeals his convictions for attempted rape[1] as a Class B felony, battery[2] as a Class C felony, criminal confinement[3] as a Class D felony, and intimidation[4] as a Class D felony. Smith also challenges the constitutionality of Indiana's repeat sexual offender statute, Indiana Code Section 35–50–2–14. We affirm in part and vacate in part.

### Issues

We restate the two issues Smith presents as follows:

I.  Whether the trial court abused its discretion in instructing the jury; and

II. Whether Indiana Code Section 35–50–2–14 violates Article I, Section 19 of the Indiana Constitution.

### Facts and Procedural History

The facts most favorable to the jury's verdict indicate that on September 27, 2002, eighteen-year-old C.A. reported for her first night of work as a dancer at Andy's Gentleman's Club. At approximately 11:30 p.m., C.A. told the manager that she quit. She unsuccessfully attempted to contact a friend who was supposed to pick her up at 3:00 a.m. She then talked with the club's disc jockey and Smith, his uncle. Smith offered to drive C.A. to a bowling alley to look for her friend. After the disc jockey vouched for Smith, she took her two duffel bags and left with him.

Smith drove C.A. to the bowling alley, but her friend was not there. Smith exited the car and relieved himself. C.A. asked Smith to drive her to her brother's house in Valparaiso. Smith attempted to purchase beer at a drugstore, then drove into an apartment complex and relieved himself again. C.A. asked him to drive her back to the club to meet her friend. Smith drove toward the club, announced that he needed to relieve himself again, and suddenly pulled onto the shoulder of the road. Smith looked around as a vehicle passed by, then turned left and drove past two houses and a paving business. When C.A. told Smith to stop, he stated that he needed to relieve himself again. Smith drove to the end of the road and turned off the engine.

Smith exited the car, shut the door, and immediately got back in. He fully reclined his seat, exposed his penis, and said, "You're going to give me some of that head." Tr. at 271. C.A. asked Smith what he was talking about and reached for the door handle. He forcefully grabbed the back of her neck and compelled her to perform oral sex. *Id.* at 272. C.A. again reached for the door handle, whereupon Smith locked the doors. After a few minutes, he told her to take off her pants. When C.A. begged Smith to let her go, he

---

1.  Ind.Code §§ 35–42–4–1 (rape), 35–41–5–1 (attempt).

2.  Ind.Code § 35–42–2–1 (battery resulting in serious bodily injury).

3.  Ind.Code § 35–42–3–3.

4.  Ind.Code § 35–45–2–1.

grabbed her neck and choked her. She leaned back between the front seats and kicked the window, infuriating Smith. He grabbed her by the throat and slammed her into the backseat, yelling, "Don't you fuck up my car. Do not fuck up my car, bitch. You're fucking dead now." *Id.* at 275. Smith choked C.A. so hard that she saw white. She said, "I'm sorry, I'm sorry[,]" then mouthed the words, "I'm dying, I'm dying, I'm dying." *Id.*

Smith released his grip and ordered C.A. to take off her pants. She removed her shoes and again attempted to unlock the door. He smacked her hand and grabbed her throat. Crying, C.A. removed her pants. Smith grabbed her underwear and pulled. C.A. rolled onto her stomach, opened the rear passenger door, and grasped the outside of the car. Smith scratched her neck and ripped her shirt, then grabbed her necklace and pulled it against her neck until the chain broke. C.A. fell onto the concrete and kicked at Smith as he grabbed at her legs. Eventually, Smith said, "Fine." *Id.* at 278. C.A. fled, clad only in a t-shirt and socks.

C.A. ran toward the houses up the road and twice hid from Smith's car as it drove past. The residents of one house responded to C.A.'s appeals for help and called 911 at her request. Officer Chad Crosby responded and interviewed C.A., who was crying hysterically. A search of the area revealed C.A.'s clothing and duffel bags, as well as a single silver chain link and Smith's wallet. C.A. identified Smith from his driver's license photo. She was later examined at Porter Memorial Hospital. C.A. had sustained abrasions to her neck and chest area, an abrasion to her right pinky finger, bruises around her neck, and fingerprint bruises on her right shoulder. She also complained of lower back pain.

The State charged Smith with Class B felony criminal deviate conduct, Class B felony attempted rape, Class C felony battery, Class D felony criminal confinement, and Class D felony intimidation, and alleged him to be a repeat sexual offender by virtue of two prior unrelated rape convictions. On January 24, 2003, a jury found Smith not guilty of criminal deviate conduct and found him guilty of all other charges. Smith filed a memorandum challenging the constitutionality of the repeat sexual offender statute, Indiana Code Section 35-50-2-14. The trial court upheld the constitutionality of the statute and found Smith to be a repeat sexual offender. The trial court sentenced Smith to twenty years on the underlying convictions and to an additional ten years based on his repeat sexual offender status. Smith now appeals.

## Discussion and Decision

### I. Jury Instruction

■ The trial court instructed the jury that "[t]he uncorroborated testimony of one witness alone is sufficient to sustain a conviction so long as it convinces you beyond a reasonable doubt as to the defendant's guilt on each essential element of the charge." Appellant's App. at 27 (Instruction No. 15). Smith observes that our supreme court recently held in *Ludy v. State*, 784 N.E.2d 459 (Ind.2003), that the giving of a similar instruction was error. *See id.* at 460 (" 'A conviction may be based solely on the uncorroborated testimony of the alleged victim if such testimony establishes each element of any crime charged beyond a reasonable doubt.' "). The *Ludy* court explained that the instruction "unfairly focuses the jury's attention on and highlights a single witness's testimony"; that it "presents a concept used in appellate review that is irrelevant to a jury's function as fact-finder"; and that "by using the technical term 'uncorroborated,' the instruction may mislead or confuse the jury." *Id.* at 461. Smith con-

tends that C.A.'s testimony was uncorroborated and that he is therefore entitled to a new trial.

■ We disagree. As the State points out, Smith failed to object to the instruction at trial and has therefore waived this issue for review. *Mitchell v. State,* 726 N.E.2d 1228, 1241 (Ind.2000). Additionally, we note that Officer Crosby testified over objection regarding his interview with C.A., during which she recounted essentially the same events to which she testified at trial. Also, emergency room physician Dr. Robert Brunk testified without objection as to what C.A. had told him about the incident and opined that the markings on her body were consistent with her account. Tr. at 243. In other words, C.A.'s testimony was not uncorroborated. As such, any error in giving the instruction can only be considered harmless. We therefore affirm Smith's convictions for attempted rape, battery, criminal confinement, and intimidation.

## II. Constitutionality of Indiana Code Section 35–50–2–14

■ Indiana Code Section 35–50–2–14 reads as follows:

(a) The state may seek to have a person sentenced as a repeat sexual offender for a sex offense under IC 35–42–4–1 through IC 35–42–4–9 or IC 35–46–1–3 by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated one (1) prior unrelated felony conviction for a sex offense under IC 35–42–4–1 through IC 35–42–4–9 or IC 35–46–1–3.

(b) After a person has been convicted and sentenced for a felony committed after sentencing for a prior unrelated felony conviction under IC 35–42–4–1 through IC 35–42–4–9 or IC 35–46–1–3, the person has accumulated one (1) prior unrelated felony conviction. However, a conviction does not count for purposes of this subsection, if:

(1) it has been set aside; or

(2) it is one for which the person has been pardoned.

(c) The court alone shall conduct the sentencing hearing under IC 35–38–1–3.

(d) A person is a repeat sexual offender if the court finds that the state has proved beyond a reasonable doubt that the person had accumulated one (1) prior unrelated felony conviction under IC 35–42–4–1 through IC 35–42–4–9 or IC 35–46–1–3.

(e) The court may sentence a person found to be a repeat sexual offender to an additional fixed term that is the presumptive sentence for the underlying offense. However, the additional sentence may not exceed ten (10) years.

■ Smith contends that Indiana Code Section 35–50–2–14 violates Article I, Section 19 of the Indiana Constitution.

Whether a statute is constitutional on its face is a question of law. When the issue presented on appeal is a pure question of law, we review the matter de novo. Further, legislation under constitutional attack is clothed in a presumption of constitutionality. The challenger has the burden to rebut this presumption. All reasonable doubts must be resolved in favor of an act's constitutionality. When a statute can be construed so as to support its constitutionality, we must adopt such a construction.

*Shepler v. State,* 758 N.E.2d 966, 968–69 (Ind.Ct.App.2001) (citations omitted), *trans. denied* (2002).

Article I, Section 19 of the Indiana Constitution provides, "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." In contending that the repeat sexual offender statute violates this provision, Smith relies

on cases regarding the habitual offender statute, Indiana Code Section 35–50–2–8, which reads in relevant part as follows:

(a) Except as otherwise provided in this section, the state may seek to have a person sentenced as a habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated felony convictions.

. . . .

(f) If the person was convicted of the [underlying] felony in a jury trial, the jury shall reconvene for the sentencing hearing. If the trial was to the court or the judgment was entered on a guilty plea, the court alone shall conduct the sentencing hearing under IC 35–38–1–3.

(g) A person is a habitual offender if the jury (if the hearing is by jury) or the court (if the hearing is to the court alone) finds that the state has proved beyond a reasonable doubt that the person had accumulated two (2) prior unrelated felony convictions.

(h) The court shall sentence a person found to be a habitual offender to an additional fixed term that is not less than the presumptive sentence for the underlying offense nor more than three (3) times the presumptive sentence for the underlying offense. However, the additional sentence may not exceed thirty (30) years.

In *Seay v. State,* 673 N.E.2d 475 (Ind.Ct. App.1996) ("*Seay I* "), *trans. granted and opinion adopted by Seay v. State,* 698 N.E.2d 732 (Ind.1998) ("*Seay II* "), this court addressed the issue of whether Article I, Section 19 applies in habitual offender proceedings, specifically as to whether the trial court must instruct the jury that it is the judge of both the law and the facts as to the defendant's status as a habitual

offender. In answering that question affirmatively, the *Seay I* court stated,

Habitual offender hearings are characteristically much shorter and less complex than are trials, but they are no less momentous. The task assigned to the jury in the habitual offender hearing is as critical as that of the jury sitting in a trial of a charged crime. Once the jury finds that an accused is an habitual offender, the law mandates that the court enhance the sentence imposed for the underlying offense. As with any other jury, the jury in an habitual offender proceeding "has the discretion to disbelieve or discredit any or all of the State's evidence, no matter how unimpeachable."

The habitual offender hearing is a jury trial and jurors play a significant role in guarding against an improper infringement upon an accused's liberty interests. As Justice DeBruler explained:

The commands of past and present habitual offender statutes are exceptional in their severity. In recognition of this severity the legislature requires habitual offender status to be pleaded like an outright criminal charge, that proof be made beyond a reasonable doubt, and that the right to trial by jury be afforded. The policy gives the accused the same protection[s] from misuse of the trial process of determining habitual offender status that are afforded in the trial process of determining guilt. It even sanctions exercise of the jury nullification power.

*Weatherford* [*v. State,* 619 N.E.2d 915, 918 (Ind.1993) ] (DeBruler, J., dissenting).

While the issues to be determined in an habitual offender proceeding are narrowly defined by statute, we agree with Justice DeBruler and with Justice Dick-

son that the jury has full authority within that sphere to perform its constitutional function. *See Duff v. State*, 508 N.E.2d 17, 24 (Ind.1987) (Dickson, J., dissenting) (recognized the "unquestioned right of a jury to refuse to find defendant a habitual offender even with uncontroverted proof of the prerequisite prior felony convictions"). We find nothing in the habitual offender statute to suggest that the legislature intended for the jury's constitutional role to be diminished in an habitual offender proceeding. Indeed, a statute may not be in derogation of rights and safeguards secured by the constitution.

The constitution is emphatic that the right of the jury to determine the law as well as the facts applies "[i]n all criminal cases whatever." IND. CONST. art. 1, § 19 (emphasis added). "All" is defined as "the whole extent or duration of ... each and every one of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 54 (1976). "Whatever" is defined as "no matter what ... of any kind at all." *Id.* at 2600. We believe that the terms "all" and "whatever" mean what they say. In interpreting the Indiana Constitution, our analysis is controlled by the text itself. Article 1, Section 19 does not speak of verdicts but of "criminal cases." Where a significant liberty interest is involved, there is no constitutional distinction between a verdict and an habitual offender adjudication.

An habitual offender charge, derived from the criminal code, is pleaded as an "outright criminal charge." *Weatherford*, 619 N.E.2d at 918 (DeBruler, J., dissenting). The habitual offender proceeding occurs within a criminal case in a separate count under the same cause number as the underlying felony.

*Id.* at 479–80 (some citations omitted).

In *Seay II*, our supreme court adopted our opinion regarding the applicability of Article I, Section 19 to habitual offender proceedings and added several observations of its own, including the following:

Some defendants have claimed that the habitual offender statute is unconstitutional either because the jury is not involved in deciding the penalty for being a habitual offender or is not allowed to take the penalty into account in making that determination. *See, e.g., Taylor v. State*, 511 N.E.2d 1036, 1039 (Ind. 1987). Whatever the merits of those arguments may be, determining the habitual offender *penalty* is clearly different from determining habitual offender *status* and, in any event, [the supreme court had] long held that art. I, § 19 does not apply in *penalty* determinations. We reaffirm that art. I, § 19, does not require that the jury be advised of the penalty for being a habitual offender or be involved in deciding the amount of the penalty.

Other defendants have raised claims similar to the one Seay raises here: that art. I, § 19, entitles the jury to determine whether the defendant is a habitual offender both as a matter of fact and of law. In *Jones v. State*, 449 N.E.2d 1060 (Ind.1983), the defendant argued that because the habitual offender statute mandated that the jury find a person to be a habitual offender if it finds the prerequisite prior felonies properly proven, it impinged upon the jury's constitutional responsibility to be the judge of the law as well as the facts. Our Court made no distinction between habitual offender *status* and habitual offender *penalty* and reaffirmed the principle that the jury had no role in assessing penalties. In doing so, our Court cited to [several cases, including *Taylor*]—cases where the penalty determination, not the status determination,

[was] at issue. We concluded in *Jones* that "the habitual offender statute is a means of sentencing and is not a determination of the law necessary to reach the verdict." 449 N.E.2d at 1066. It is this conclusion that has been the source of much confusion. For this reason, we overrule *Jones* to the extent that it can be interpreted to mean that art. I, § 19, does not apply to the status determination in habitual offender proceedings.

*Id.* at 734 (some citations and footnote omitted).

Relying on *Seay II*, Smith contends that Indiana Code Section 35–50–2–14 violates Article I, Section 19 because it does not allow a jury to determine the laws and the facts regarding his status as a repeat sexual offender following a jury trial and conviction on the underlying felony. The State responds that the repeat sexual offender statute, like the habitual offender statute, does not create a new criminal offense but instead merely enhances the punishment for the underlying felony. Appellant's Br. at 13 (citing, *inter alia, Greer v. State*, 680 N.E.2d 526, 527 (Ind. 1997)). The State further observes that " '[t]he jury's right under the Indiana Constitution to determine the law has some limitations; the jury, for instance, has no responsibility to assess penalties under the current criminal code.' " *Id.* at 14 (quoting *Taylor*, 511 N.E.2d at 1040).

The State's argument is correct as far as it goes, but it is premised on pre-*Seay* cases such as *Taylor* that fail to distinguish between the determination of a defendant's status and the determination of a defendant's penalty. We acknowledge pre-*Seay* supreme court precedent stating that "[t]he right to have a jury act as the trier of fact at a felony sentencing hearing at which the habitual offender status of the defendant is in issue exists by virtue of our statutory law." *Dyer v. State*, 460 N.E.2d

511, 512 (Ind.1984). In *Dyer*, this proposition is supported by a citation to *Williams v. State*, 271 Ind. 656, 395 N.E.2d 239 (1979). *Williams* does not mention habitual offender proceedings but states only that our supreme court had "long held that a defendant's right to trial by jury is not offended by a statutory scheme which does not require the jury to fix the punishment of the defendant." *Id.* at 663, 395 N.E.2d at 245 (citing, *inter alia, Skelton v. State*, 149 Ind. 641, 49 N.E. 901 (1898)).

With respect to Article I, Section 19, the *Skelton* court stated,

The law, when applied to the facts found, determines the guilt or innocence of the accused, and, in case of guilt, determines the crime committed. Of all this the jury has supreme control, under the constitution. But the sentence is the judgment of the court as to what, within the statutory limits, ought to be the proper punishment for the crime of which the defendant has been convicted.

*Skelton*, 149 Ind. at 645, 49 N.E. at 902. In other words, the *Skelton* court recognized the critical distinction between the jury's determination of a defendant's guilt status via its verdict and the trial court's determination of a defendant's penalty via its sentence. In our opinion in *Seay I*, which our supreme court adopted in *Seay II*, we concluded that "[w]here a significant liberty interest is involved, there is no constitutional distinction between a verdict and an habitual offender adjudication." *Seay I*, 673 N.E.2d at 480. We believe that the same may be said of a repeat sexual offender adjudication.

We therefore conclude that the right to have a jury determine the facts and the law regarding a defendant's repeat sexual offender status exists by virtue of Article

I, Section 19 of the Indiana Constitution.[5] Indiana Code Section 35–50–2–14 is unconstitutional on its face and as applied to Smith in this case. Consequently, we vacate Smith's repeat sexual offender adjudication and sentence enhancement.[6]

Affirmed in part and vacated in part.

SULLIVAN, J., and ROBB, J., concur.

---

**5.** *Cf. Snyder v. State,* 654 N.E.2d 15, 19 (Ind. Ct.App.1995) ("Snyder correctly notes that our Supreme Court did not hold in *Dyer* that a jury hearing in the habitual offender proceedings is not required under constitutional due process. To this end, Snyder contends that, while the right to a jury hearing in habitual offender proceedings is found in our statutory law, the United States Constitution and the Indiana Constitution mandate that an accused be afforded the opportunity to have the habitual offender allegation tried by jury. Because the habitual offender statute provides for a jury trial, we need not resolve this question today."), *summarily aff'd except as to relief ordered by Snyder v. State,* 668 N.E.2d 1214 (Ind.1996).

**6.** Citing *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Smith also contends that Indiana Code Section 35–50–2–14 violates the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution because it "forces a judge to determine facts besides just that of repeat offender status when weighing what sentence a person should receive." Appellant's Br. at 13. Because we have already concluded that the statute violates the Indiana Constitution, we need not resolve that question here. We presume that the legislature will follow applicable federal law should it decide to enact another version of the repeat sexual offender statute.